IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THERABODY, INC.,

    Plaintiff,                                             Civil Action No. 3:23-cv-545

v.

DAVID C. WALTON,

**SERVE:**    David C. Walton
                  13321 W. Salisbury Road
                  Midlothian, VA 23113

    Defendant.

## COMPLAINT

Plaintiff Therabody, Inc. ("Plaintiff" or "Therabody"), by counsel, for its Complaint against David C. Walton ("Mr. Walton") states as follows:

## INTRODUCTION

1. Therabody brings this Complaint to recover at least $4,656,304.00 from Mr. Walton as a result of fraudulently inducing Therabody to enter into a Therabody Terms & Conditions of Sale (Corporate Markets) Agreement (the "***Agreement***"), dated September 12, 2022, with Mr. Walton's company, Dominion Sourcing, LLC ("***Dominion***"), whereby Therabody sold its patented, high-end percussive massage devices, wellness products, and accessories (the "***Products***") to Dominion at a significantly reduced price under the guise that Dominion and Mr. Walton would use the Products as corporate gifts. A true and accurate copy of the Agreement is attached as **Exhibit 1**.

2. During negotiations between Therabody and Mr. Walton, Therabody expressed concern that the Products would end up in marketplaces at reduced costs, thereby disrupting

1

Therabody's authorized retailers. Still, Mr. Walton insisted that none of the Products would end up for sale.

3. In exchange for Therabody's agreement to sell Dominion the Products, Dominion unambiguously and expressly agreed to not transfer or sell the Products to any person who could reasonably be expected to sell the Products on any e-commerce marketplace.

4. Therabody—through its own diligence—has discovered that the Products it sold to Dominion are now being sold on e-commerce marketplaces, namely Amazon.com but likely others, in breach of the Agreement and in direct contradiction to what Mr. Walton led Therabody to believe when Dominion and Therabody entered into the Agreement.

## PARTIES

5. Plaintiff is a corporation organized and incorporated under the laws of the State of Delaware, with its principal place of business in the State of California.

6. Mr. Walton is an individual who, upon information and belief, is domiciled in the Commonwealth of Virginia and resides at 13321 W. Salisbury Road in Midlothian, Virginia.

7. Plaintiff understands that Mr. Walton is the principal and owner of Dominion and used Dominion to perpetrate fraud against manufacturers, such as Therabody, by purchasing products at discounted prices, in bulk, for the stated purpose of gifts to employees, clients, and/or affiliates, but in reality, Mr. Walton sells the purchased products at an increased price on e-commerce marketplaces or to individuals or entities who then sell the products at an increased price on e-commerce marketplaces.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states. For purposes of diversity

jurisdiction, Therabody is considered a Delaware and California citizen whereas Mr. Walton is a Virginia citizen. Accordingly, complete diversity of citizenship exists between the parties.

9. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is proper in the Eastern District of Virginia because Mr. Walton resides within the jurisdiction of the United States District Court for the Eastern District of Virginia, Richmond Division. *See* 28 U.S.C. § 1391(b)(1).

## BACKGROUND

### *Plaintiff's Business*

11. Plaintiff sells the Products on the internet through its website and e-commerce marketplaces, such as Amazon.com, or in traditional brick-and-mortar establishments and directly to consumers or other businesses in interstate commerce.

12. Plaintiff also sells to and through certain wholesalers and authorized resellers (each, an "***Authorized Reseller***" and collectively, the "***Authorized Resellers***").

13. The Products bear various trademarks validly registered with the United States Patent and Trademark Office and are protected by various patents.

14. Plaintiff strives to ensure that consumers of its Products are receiving authentic Products from either Plaintiff itself or one of its reputable Authorized Resellers.

15. As a result, Plaintiff has become an industry leader in the market, and the Products are synonymous with high-end, top-quality percussive massage devices.

### *Therabody Enters into the Agreement with Dominion*

16. On September 12, 2022, Dominion entered into the Agreement with Therabody, and Mr. Walton executed the Agreement on behalf of Dominion.

17. The Agreement outlined the terms and conditions under which Therabody would sell the Products to Dominion.

18. Therabody granted a limited license to Dominion, provided instructions to Dominion as to how to purchase the Products, and obligated Dominion to conduct its business in a manner that reflected favorably on the Products and Therabody, among other things. *See* Agreement at Sections 2, 4, and 6.

19. In Section 3 of the Agreement, Dominion expressly agreed that, by purchasing the Products, Dominion would be prohibited from reselling the Products.

20. Specifically, Section 3 provides:

> The sale of Products by [Dominion] is strictly prohibited. [Dominion] acknowledges and agrees that it shall not actively sell or promote any Products. In order to ensure the same and proper handling of the products, and to preserve the luxury brand image of the Products, [Dominion] agrees not to sell Products on or via any third-party market place e-commerce websites, including but not limited to Amazon or E-Bay, and not sell any Products to operators of e-commerce websites for sale on such marketplace websites, and not sell or otherwise transfer Products to any person who could reasonably be expected to sell the products on any such marketplace website.

*See* Agreement at Section 3.

21. Section 3 is an integral part of the Agreement, and Therabody specifically bargained for this Section due to the harm caused by the unauthorized resale of the Products on e-commerce websites, which is precisely why Therabody only permits the resale of its Products through Authorized Resellers.

22. In this e-commerce age, unauthorized resellers obtain products from a variety of sources and then sell products anonymously online.

23. Many times, the products sold by unauthorized resellers may be materially different than those sold by the brand or authorized resellers. In some instances, Therabody has also

determined that some products sold by unauthorized resellers are counterfeit devices and not genuine Therabody products.

24. Specifically, even if the products are genuine, unauthorized resellers may sell products without warranties, of an inferior quality, that are defective, and in violation of a business's rights in its intellectual property.

25. Indeed, on the Amazon Marketplace, all sales of a particular product are sold under a unique Amazon Standard Identification Number such that consumers do not know whether a product is sold by an unauthorized reseller or a legitimate reseller.

26. Because the unauthorized resellers are able to sell without disclosing their identity, manufacturers and brands experience challenges in communicating with the unauthorized resellers to alert them of material differences.

27. Ultimately, consumers are harmed as they unknowingly buy a materially different product compared to a legitimate product from the manufacturer.

28. With this in mind, Therabody specifically bargained for, and Dominion agreed to, Section 3 of the Agreement.

### *Mr. Walton Fraudulently Induced Therabody to Enter into the Agreement*

29. During August and September 2022, Mr. Walton exchanged correspondence with Therabody's sales representatives regarding the sale and purchase of the Products.

30. Mr. Walton and Therabody's representative also discussed the same via telephone.

31. During these communications, Mr. Walton represented, falsely, to Therabody that Dominion was purchasing the Products for Dominion's affiliates, clients, and employees, including "a huge company wide campaign," and "other larger companies." *See* September 1, 2022 Email Correspondence between Mr. Walton and Andrew Spellman, attached as **Exhibit 2**.

32. For example, Mr. Walton initially reached out to Therabody representatives on August 23, 2023, to "source a lot of [Therabody] product." *See* August 23, 2022 Email Correspondence from Mr. Walton to Hannah Solton, attached as **Exhibit 3**.

33. Andrew Spellman, Therabody's Vice President of Corporate Markets, made contact with Mr. Walton, who then followed up by asking for pricing on two to three thousand products of Therabody's Pro, Elite, Mini, and Prime percussive massage devices, each. *See* Exh. 2.

34. Mr. Walton then asked for an additional quote of five thousand for each of the lines of Products. *See id.*

35. Ultimately, Mr. Walton further enticed Therabody to complete the sale by teasing Therabody that it would be "a huge company wide campaign" and a follow-up sale with the "same group of companies." *See id.*

36. Mr. Walton also compared these transactions with Therabody to another previous transaction Dominion purportedly completed for "30,000 computers from [S]taples for [Dominion's] employees and drivers." *See id.*

37. Contemporaneous with the email communications in August and September, 2022, Mr. Walton represented to Therabody that the Products Dominion intended to purchase would be used for Dominion's employees, clients, and affiliates as well.

38. As a result of the foregoing, Therabody reasonably understood that Dominion was purchasing the Products to be used as gifts for its employees, clients, and affiliates.

39. Now, Therabody understands that Mr. Walton's representations that led Therabody to enter into the Agreement are materially false, and but for Mr. Walton's representations and the Agreement's Section 3, Therabody would not have entered into the Agreement.

***Dominion Begins Purchasing Products***

40. Dominion then purchased the Products from Therabody, pursuant to the Agreement, under the guise that Dominion would be using the Products as gifts to its employees, business partners, and/or affiliates.

41. First, on September 2, 2022, Dominion placed an order (Order No. SO1162234) for 10,500 Products in the amount of $1,422,500 (the "***First Order***"), which is attached as **Exhibit 4**.

42. Then on October 12, 2022, Dominion placed another order (Order No. SO1190190) for 9,092 Products in the amount of $1,620,004 (the "***Second Order***"), which is attached as **Exhibit 5**.

43. On December 14, 2022, Dominion placed a third order (Order No. SO1309224) for 1,000 Products in the amount of $125,000 (the "***Third Order***"), which is attached as **Exhibit 6**.

44. Lastly, on January 10, 2023, Dominion placed a fourth order (Order No. SO1354224) for 4,000 Products in the amount of $670,000 (the "***Fourth Order***") (collectively, the "***Orders***"), which is attached as **Exhibit 7**.

45. Dominion placed the Orders subject to the terms and conditions in the Agreement, including the prohibition on the resale or transfer of the Products as set forth in Section 3.

46. In total, Dominion purchased 24,592 Products for $3,837,504 from Therabody.

47. If the Products sold to Dominion were purchased at MSRP the total purchase price of the Products would amount to $8,493,808.

48. A detailed listing of the Products, quantities purchased, purchase price paid and the MSRP of each Product is set forth on **Exhibit 8**.

### *Therabody Discovers the Products in E-Commerce, in Violation of the Agreement*

49. As detailed above, due to the current state of e-commerce marketplaces, with unauthorized resellers selling materially different products, Therabody actively monitors the sales of its Products.

50. In particular, Therabody conducts test buys of its Products and tracks its Products through its channels using product identification numbers.

51. Therabody kept records of the product identification numbers for the Products it sold to Dominion.

52. After Dominion purchased the Products from Therabody, Therabody conducted test buys of Products listed for sale on e-commerce marketplaces.

53. Specifically, on January 24, 2023, Therabody placed an order for a Product—a Theragun Prime—from a reseller doing business as Caresour Official Store on the Amazon Marketplace.

54. Therabody traced this Product through its product identification numbers to the Products Dominion purchased that were subject to the Agreement, including Section 3.

55. As a result, Therabody discovered that Dominion is either selling or offering for sale the Products on e-commerce marketplaces through one or more affiliates or have transferred the Products to others to then sell the Products on e-commerce marketplaces.

### *Therabody's Damages Amount to $4,656,304*

56. Because Mr. Walton perpetuated fraud against Therabody, Dominion was able to purchase the Products for $3,837,504.

57. The MSRP of the Products purchased by Dominion amounts to $8,493,808.

58. Therefore, the difference between the price paid by Dominion for the Products and the MSRP for the Products equals $4,656,304.

59. Accordingly, had Therabody not been fraudulently induced by Mr. Walton and instead sold the Products at retail, Therabody would have earned an additional $4,656,304.

### *Dominion and Mr. Walton Ignore Therabody's Request for Immediate Payment*

60. As a result of the foregoing, Therabody sent a February 7, 2023 letter to Mr. Walton (the "*Letter*"), which is attached as **Exhibit 9**.

61. The Letter set forth the terms of the Agreement and Orders, as well as the purchase price and MSRP of the Products, and requested immediate payment.

62. Mr. Walton refused to compensate Therabody for the difference in the price paid by Dominion and the MSRP of the Products.

### *Therabody Initiates Litigation and Arbitration*

63. As a result, Plaintiff initiated litigation in the United States District Court, Central District of California, bearing case number 2:23-cv-02086-SB-AS, styled *Therabody, Inc. vs. Dominion Sourcing, LLC, et al.*

64. After perfecting service of the summons and complaint, Dominion and Mr. Walton filed a motion to dismiss, asserting *inter alia* that the dispute should be arbitrated.

65. Thereafter, Therabody dismissed the California litigation, **without prejudice**, and filed a demand for arbitration before the American Arbitration Association.

66. However, Dominion and Mr. Walton refused to consent to arbitration, despite previously asserting that the arbitration provision in the Agreement applied.

67. Instead, Dominion and Mr. Walton ignored Therabody's requests.

68. Accordingly, Plaintiff initiated this action against Mr. Walton in this Court.

### COUNT ONE
### (FRAUD)

69. Therabody incorporates the preceding paragraphs as if fully restated herein.

70. Mr. Walton made false representations of positive, material fact when he, *inter alia*, represented to Therabody that the Products purchased were for Dominion's employees, clients, and/or affiliates and to be used as corporate gifts, when in reality Mr. Walton and Dominion had no intention of gifting the Products and instead intended to resell the Products or transfer the Products to individuals reasonably known to Mr. Walton and Dominion to then sell the Products on e-commerce marketplaces.

71. Mr. Walton made these false representations of material fact intentionally and knowingly because he knew that Therabody's agreement with its Authorized Resellers and the Agreement prevented Dominion and Mr. Walton from selling the Products on e-commerce marketplaces or transfer the Products to individuals reasonably known to Mr. Walton or Dominion to sell the Products on e-commerce marketplaces.

72. With these false representations, Mr. Walton intended to, and did, mislead Therabody into believing that the Products purchased would be used as corporate gifts.

73. Mr. Walton made these false representations, which include, *inter alia*, representations that the Products would be used as corporate gifts, for the specific purpose of procuring Therabody's assent to the Agreement.

74. Therabody reasonably relied on Mr. Walton's representations that Mr. Walton and Dominion were purchasing the Products to then use as corporate gifts for Dominion's employees, clients, and/or affiliates.

75. As a result of Mr. Walton's false representations of material fact, Therabody was induced to sell the Products to Dominion with the Orders and subject to the Agreement.

76. As a result of Mr. Walton's false representations of material fact, Therabody has been damaged in an amount of at least $4,656,304, plus punitive damages, attorneys' fees, and the costs and expenses associated with bringing this action pursuant to Virginia law.

**WHEREFORE,** Plaintiff prays for judgment against Defendant as follows:

A. As to Count One, award compensatory damages in an amount equal to or greater than $4,656,304.00, but ultimately to be determined at trial;

B. As to Count One, award punitive damages in the amount of Three Hundred and Fifty Thousand Dollars ($350,000.00);

C. As to Count One, award pre-judgment and post-judgment interest;

D. An award for attorneys' fees and the costs associated with this action; and

E. Any other relief that this Court deems just and proper.

Respectfully submitted,

**THERABODY, INC.**

By: ___/s/_____
William D. Prince IV, Esquire (VSB No. 77209)
Rachel W. Adams, Esquire (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel.: (804) 649-7545
Fax: (804) 780-1813
Email: wprince@t-mlaw.com
Email: radams@t-mlaw.com

Alex E. Jones, Esquire (to be admitted *pro hac vice*)
Kyle D. Stroup, Esquire (to be admitted *pro hac vice*)
KOHRMAN JACKSON & KRANTZ LLP
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114
Telephone: (216) 696-8700
Email: aej@kjk.com
Email: kds@kjk.com
*Counsel for Plaintiff*