# Exhibit 1

# THERABODY Terms & Conditions of Sale (Corporate Markets)

This Terms and Conditions of Sale (the "**Agreement**") is made and entered into as of the last date of signature by and between Therabody, Inc. a Delaware corporation ("**Therabody**") and the buyer listed on the signature page hereto ("**Buyer**").

**1. SCOPE.** The Agreement will exclusively govern and control the provision of any products purchased (the "**Products**") from Therabody by Buyer. This Agreement, comprises the entire agreement between the parties, and supersedes all prior or contemporaneous understandings, agreements, negotiations, representations and warranties, and communications, both written and oral. The Buyer agrees that the terms and conditions of this Agreement shall prevail, notwithstanding any contrary or additional terms in any purchase order, sales acknowledgement, confirmation or any other document of either party concerning the purchase or sale of the Products. To the extent they are not in direct conflict with this Agreement, the terms of Therabody's standard purchase order form, form invoices and credit application form will be incorporated in and made a part of this Agreement.

**2. LIMITED LICENSE.** Buyer acknowledges that Therabody is the exclusive owner of all copyrights and trademarks, including Therabody's name, logo and promotional materials (the "**Therabody Marks**") in connection with the Products. In the performance of this Agreement, Buyer shall only be entitled to use and display those of Therabody's Marks and copyrighted materials that have been approved by Therabody for use in relation to the provisions of the Products to Buyer's employees; provided, however, that Buyer shall follow the instructions of Therabody as to the use or discontinuance of use of such trademarks and materials. Buyer agrees not to modify, adapt, alter, or create derivative works from the Products. Buyer will not remove, alter, or obscure in any way any proprietary rights notices of Therabody on or within the Products. Use of these trademarks and materials shall not grant Buyer any rights to the same.

**3. PROHIBITED SALES.** The sale of Products by Buyer is strictly prohibited. Buyer acknowledges and agrees that it shall not actively sell or promote any Products. In order to ensure the same and proper handling of the Products, and to preserve the luxury brand image of the Products, Buyer agrees not to sell Products on or via any third-party market place e-commerce websites, including but not limited to Amazon or E-Bay, and not sell any Products to operators of e-commerce websites for sale on such marketplace websites, and not sell or otherwise transfer Prodcuts to any person who could reasonably be expected to sell the Products on any such marketplace website. Buyer agrees that Therabody would incur damages from the violation of this section that are difficult to calculate. Therefore, if Buyer breaches this Section 3, without prejudice to Therabody's other rights and remedies under this Agreement and notwithstanding anything to the contrary in Section 9, Buyer shall pay Therabody, as liquidated damages, the difference between the purchase price paid by Buyer for the Products and the MSRP for such Products. Buyer and Therabody agree that any damages payable by Buyer pursuant to this Section 3 are a genuine pre-estimate of the Therabody's loss in respect of matters dealt with in this Section 3.

**4. RESPOSIBILITY OF BUYER.** Buyer will: (i) conduct its business in a manner that reflects favorably on the Products and the good name, goodwill and reputation of Therabody, in accordance with the any guidelines issued by Therabody in writing from time to time; (ii) make no false or misleading representations concerning Therabody or the Products including any representation concerning any medical or curative effect or purpose of the Products, (iii) make no representations, warranties or guarantees with respect to the specifications, features or capabilities of the Products which are inconsistent with the literature distributed by Therabody; (iv) only use the Therabody Marks as expressly authorized in writing by Therabody; and (v) not disparage Therabody, its officers or its owners, or take any action that impairs Therabody's goodwill or negatively affects the value of Therabody's business. Buyer shall hold Therabody harmless from any liability deriving from the violation or incorrect application of the above listed obligations and rules.

**5. PURCHASE AND DELIVERY.** Buyer may order Products from Therabody by submitting an order ("**Order**"), pursuant to Therabody's order system and policies. Any Orders received from Buyer by Therabody shall be deemed to have been authorized by Buyer. Such Order will include, at a minimum, (i) unit description and quantity; (ii) shipping destination; (iii) requested delivery date; and (iv) other instructions or requirements pertinent to the Order. All Orders shall be subject to Therabody's acceptance and this Agreement will exclusively govern and control the provision of Products from Therabody. If Buyer cannot use Therabody's electronic order system, Buyer may submit an order in written form using Buyer's purchase order form. However, any additional or contradictory terms and conditions contained on Buyer's order form will be of no effect, regardless of Therabody's acknowledgment or acceptance of such Order. Therabody reserves the right to accept or decline any order, in whole or in part, and to cancel any accepted Order prior to shipment. Therabody shall, at its discretion, choose the most appropriate shipping method and will bear the risk of loss or damage, up to delivery of the Products to Buyer or a customer (as applicable). Therabody shall deliver the Products to Buyer's address (or such other address specified by the Buyer in the sales order form). Therabody will use commercially reasonable efforts to ship the Products on or before the shipping date agreed upon by the parties. Therabody may invoice Buyer for the Products prior to, on or at any time after the completion of delivery to Buyer or Buyer's customer (as applicable), adding shipment costs to the wholesale price of the Products. In case of delivery of a damaged or defective Therabody Product to the Buyer, Buyer shall notify Therabody within five (5) business days from delivery of that Therabody Product and Therabody will (subject to receipt by Therabody of satisfactory evidence of such damage or defect): (i) arrange for the return of the Therabody Product; and (ii) at its option, issue a replacement or provide Buyer with a credit equal to the price of the Therabody Product. Therabody's liability in respect of damaged or defective Products shall be limited to the remedies specified in this Section 5. With the exception of Products returned pursuant to the terms of the Limited Product Warranty (as defined herein), Buyer shall have no right to return any Products to Therabody. Buyer is responsible for all risks of loss or damage to the Products after Therabody's delivery of such Products to Buyer, including any and all damage as a result of theft, abuse, neglect or force majeure, regardless of whether such theft, abuse, neglect or force majeure is caused by Buyer, its employees or other third party. Therabody shall accept an Order from Buyer by counter-signing the Order or by delivering the applicable Products to Buyer, whichever occurs first. Therabody may, without liability or penalty, and without constituting a waiver of any of Therabody's rights or remedies under this Agreement: (i) cancel any accepted Orders if Therabody determines that Buyer is in violation of its payment obligations or has otherwise breached this Agreement, or (ii) reject any Order by, in each case, providing Buyer written notice thereof. There shall be no changes or modifications to any Order unless expressly agreed to in writing by an authorized agent of Therabody and Buyer.

**6. PAYMENT AND PRICES.** Therabody shall sell the Products to Buyer at Therabody's prices set forth in an accepted purchase order, or as agreed separately in writing. Full payment for the Products shall be made by Buyer to the Therabody entity set forth in the accepted purchase order or invoice in the currency set forth therein, or as agreed separately, which prices are subject to change at any time upon a thirty (30) day notice to Buyer per Therabody's sales order form. In case of a price increase, Buyer is entitled to terminate the Agreement subject to a thirty (30) day notice

period. Therabody shall have the right to discount its Products at any time at its sole discretion. After reviewing Buyer's credit application, Therabody will establish payment terms for Buyer, which, depending upon Therabody's evaluation of Buyer's credit-worthiness may require that payments be made by credit card or ACH prior to shipment, upon shipment or within a specified time after shipment. Therabody may, in its sole discretion, change the terms of payment applicable to Buyer upon notice to Buyer. Subject to the foregoing and unless otherwise communicated to Buyer by Therabody, Buyer agrees to pay Therabody the corresponding purchase price listed above thirty (30) days from the date of shipment. If Buyer fails to pay any amounts in accordance with the terms and conditions hereof, Therabody shall have the right, in addition to any of its other rights or remedies, to suspend any obligations to Buyer without liability to Buyer until such amounts are paid in full. Buyer shall pay Therabody a service charge of one and one-half percent (1.5%) per month (or the maximum allowed by law) on any past due amounts and shall also reimburse Therabody for its costs incurred in collecting any past due amounts. Buyer agrees to provide Therabody with complete and accurate billing and contact information and agrees to keep it up-to-date. Buyer shall pay for, and shall hold Therabody harmless from, all shipping charges and insurance costs. In addition, all prices are exclusive of, and Buyer is solely responsible for, all taxes with respect to, or measured by, the manufacture, sale, shipment, use or price of the Products (including interest and penalties thereon). Buyer shall not – and acknowledges that it will have no right, under this Agreement, any Order, any other agreement, document or law to – withhold, offset, recoup or debit any amounts owed (or to become due and owing) to Therabody, whether under this Agreement or otherwise, against any other amount owed (or to become due and owing) to it by Therabody, whether relating to Therabody's breach or non-performance under this Agreement, any Order, or any other agreement between Therabody and Buyer.

**7. TERM AND TERMINATION**. This Agreement shall commence on the date of the Purchase Order and continue for an indefinite period of time in accordance with and subject the below. Either party may at any time terminate this Agreement without cause with a 30-day written notice sent to the other party. Either party may terminate this Agreement at any time in the event of any material breach of this Agreement by the other party, including Buyer's failure to pay any sums owing hereunder when due, which is not cured within five (5) business days after written notice of the same. This Agreement shall terminate automatically without notice to either party hereto, as allowed and within the limitation imposed by applicable bankruptcy and/or insolvency law, if Therabody or Buyer shall become insolvent, be adjudicated bankrupt, make a general assignment for the benefit of creditors, or take the benefit of any insolvency, reorganization or other relief act or similar law, or if a receiver or trustee be appointed for its property. No termination of this Agreement will relieve Buyer of its obligation to make any payments owing to Therabody. Upon the termination or expiration of this Agreement, and subject to the following sentence: (i) Therabody reserves the right to cease all further delivery of Products (including providing access to support); (ii) all outstanding invoices for Buyer shall immediately become due and payable; (iii) all rights and licenses granted to either party hereunder will expire, unless expressly designated as surviving; and (iv) each party will promptly return to the other party (or destroy, and upon request provide a certificate of destruction signed by a company officer) all Confidential Information of the other party (if any) in such party's possession. To the maximum extent allowed by applicable law, Buyer waives any right it may have to receive any compensation or damages upon any termination of this Agreement which occurs in accordance with its terms.

**8. WARRANTIES; LIMITED WARRANTY; WARRANTY DISCLAIMER**. Each party hereby represents and warrants: (i) it is duly organized, validly existing and in good standing as a corporation or other entity as represented herein under the laws and regulations of its jurisdiction of incorporation, organization or chartering; and (ii) that this Agreement, when executed and delivered, will constitute a valid and binding obligation of such party and will be enforceable against such party in accordance with its terms. Buyer represents and covenants: (x) it shall not alter or modify in any manner whatsoever the Products sold or shipped to Buyer hereunder, except as permitted herein; and (y) Buyer shall not make any alterations to any of the packaging or labeling of the Products, or make any disease claims, health claims, or structure/function claims about the Products, that would violate or be prohibited by applicable law. Except as otherwise expressly provided in a separate, signed, written agreement between Buyer and Therabody, or as expressly provided herein, Therabody warrants solely to the Buyer that the Products shall materially conform to Therabody's published specifications for such Products at the time of manufacture (the "*Limited Product Warranty*"). The Limited Product Warranty provided herein is valid from the original date of purchase of such Products to Buyer for the periods specified for each Therabody Product on the Therabody website. The Limited Product Warranty is also valid only when the Products are used by properly trained individuals and not otherwise subject to abuse, misuse, neglect, negligence, improper testing, improper handling, improper operation, or use contrary to the instructions issued by Therabody with the Products. All technical advice, documentation and information provided by Therabody, whether by phone, e-mail, website or any other channel is provided "AS IS" and without any warranty of any kind. It is Buyer's responsibility to determine if a Therabody Product is suitable for a specific purpose and to apply the necessary safety precautions. Buyer's exclusive remedies under this Limited Product Warranty are, at Therabody's option: (i) repair or replacement of the Product that failed to conform to the warranty above, or (ii) at Therabody's option, a credit for the amount paid to Therabody for any non-conforming Product. Buyer and customer, as applicable, will be responsible for return of the Products to Therabody for repair or replacement pursuant to a return merchandise authorization ("**RMA**") issued by Therabody and in accordance with Therabody's return procedures. The foregoing states Buyer's sole and exclusive remedy, and Therabody's entire liability, for breach of warranty of purchased Products under this Agreement. Except as set forth above in Section 8, the Products and any Therabody training information, educational information, marketing materials and/or digital assets (the "*Therabody Materials*") are provided "as is" without warranties of any kind. Without limiting the foregoing, Therabody disclaims all warranties and representations of any kind, whether express, implied, or statutory, including without limitation the implied warranties of merchantability, title, non-infringement, fitness for a particular purpose, quiet enjoyment, and accuracy. Therabody does not warrant that the operation of the Products will be uninterrupted or error-free. Both parties acknowledge that they have not entered into this Agreement in reliance upon any warranty or representation other than those set forth above in this Section 8.

**9. INDEMNITY AND LIMITATION OF LIABILITY**. Each party ("**Indemnitor**") hereby agrees to defend, indemnify, and hold the other party, and their officers, directors, agents, representatives and employees (collectively "**Indemnitee(s)**"), harmless against all costs, expenses, and losses (including reasonable attorneys' fees and costs) incurred through claims of third parties against any of the Indemnitees based on: (i) breach of any representation or warranty set forth herein; or (ii) any fraud, negligence or willful misconduct by the Indemnitor (including their officers, directors, agents, representatives and employees); or (iii) agreements to indemnify otherwise stated herein. Each Indemnitor's obligations under this section shall be subject to the Indemnitee: (i) providing the Indemnitor with prompt written notice of any action, claim or proceeding to which this section may apply; (ii) cooperating with the Indemnitor (at the Indemnitor's expense) in the defense and settlement of any such action, claim or proceeding; and (iii) granting the Indemnitor sole control over the defense or settlement of any such action, claim or proceeding. Notwithstanding the foregoing, any settlement that would impose a material affirmative obligation on, or materially diminish the rights of, an Indemnitee will require the prior written consent of such party, such consent not to be unreasonably withheld or delayed, and an Indemnitee shall have the right to be represented by counsel of its own choice at its own expense. IN NO EVENT WILL EITHER PARTY BE LIABLE FOR SPECIAL, INCIDENTAL,

OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER FROM BREACH OF CONTRACT, BREACH OF WARRANTY, OR FROM NEGLIGENCE, STRICT LIABILITY, OR ANY OTHER FORM OF ACTION), EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS LIMITATION OF LIABILITY SHALL APPLY NOTWITHSTANDING THE FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY HEREIN. IN NO EVENT SHALL THERABODY'S AGGREGATE LIABILITY ARISING OUT OF, OR RELATED TO, THIS AGREEMENT–WHETHER BY REASON OF BREACH OF CONTRACT, TORT, INDEMNIFICATION, OR OTHERWISE, BUT EXCLUDING LIABILITY OF THERABODY FOR BREACH OF WARRANTY (THE SOLE REMEDY FOR WHICH WILL BE AS PROVIDED UNDER THE SECTION ABOVE) – EXCEED AN AMOUNT EQUAL TO THE TOTAL PRICE OF THE PRODUCTS PURCHASED BY BUYER UNDER THIS AGREEMENT. THE PARTIES ACKNOWLEDGE THAT THE PAYMENT AMOUNTS SPECIFIED IN THIS AGREEMENT REFLECT THE ALLOCATION OF RISK SET FORTH IN THIS AGREEMENT AND THAT THERABODY WOULD NOT ENTER INTO THIS AGREEMENT WITHOUT THE FOREGOING LIMITATIONS OF ITS LIABILITY AND THE WARRANTY DISCLAIMERS CONTAINED HEREIN. EACH LIMITATION ON LIABILITY OR LIMITED OR EXCLUSIVE REMEDY SET FORTH IN THIS AGREEMENT IS INDEPENDENT OF ANY OTHER LIMITATION OR REMEDY AND IF ANY SUCH LIMITATION OR REMEDY FAILS OF ITS ESSENTIAL PURPOSE OR IS OTHERWISE HELD TO BE UNENFORCEABLE, THAT SHALL NOT AFFECT THE VALIDITY OF ANY OTHER SUCH LIMITATION OR REMEDY.

**10. CONFIDENTIAL INFORMATION.** As used herein, "**Confidential Information**" includes, but is not limited to, any and all information given to or acquired by Buyer in the course of the Agreement relating to Therabody; its business strategy, customers, pricing, information about future product releases, marketing plans, new products and their design; and the Products. Buyer shall not divulge any Confidential Information to third parties for three (3) years from the date such Confidential Information is disclosed, and upon termination of this Agreement shall return to Therabody all Confidential Information in written form. This obligation of confidentiality shall not apply to any information which is or later becomes public knowledge through no fault of Buyer, or which is subsequently acquired by Buyer from sources under no obligations of secrecy, or which is reasonably required to be disclosed by any law or court order and shall survive after termination of the Agreement.

**11. FORCE MAJEURE.** If performance of this Agreement, or any obligation hereunder (other than the obligation to pay) is prevented, restricted, or interfered with by any act or condition whatsoever beyond the reasonable control of the affected party (including, without limitation, export or import restrictions, and inability to obtain export or import licenses; pandemic or epidemic; strike or combination of workmen or other labor disturbances; any other cause whether or not of a similar nature) ("Force Majeure"), the party so affected, upon giving prompt notice to the non-affected party, will be excused from such performance to the extent of such prevention, restriction, or interference. Force Majeure shall not excuse Buyer's failure to pay for delivered Products.

**12. GENERAL TERMS.** This Agreement can be modified only in writing signed by an authorized officer of the party against which such modification is asserted. Buyer agrees that a third-party sales representative of Therabody is not authorized to modify this Agreement. This Agreement and all questions relating to its validity, interpretation, performance, and enforcement will be governed by and construed in accordance with the laws of the State of California. Should any conflict arise, the Parties hereby irrevocably submit themselves to arbitration in Los Angeles, California. The United Nations Convention on Contracts for the International Sale of Goods shall not apply to this Agreement. The relationship between the parties is that of independent contractors. Nothing contained in the Agreement shall be construed as creating any agency, partnership, joint venture or other form of joint enterprise, employment or fiduciary relationship between the parties, and neither party shall have authority to contract for or bind the other party in any manner whatsoever. Any notice or other communication required or permitted hereunder shall be hand-delivered or mailed via express carrier, postage prepaid to the recipient party at its address as first above written or as changed by notice given hereunder and shall be deemed given upon the earlier of receipt or three (3) days after mailed. In addition, Buyer shall send a copy of all notices by email to legal@therabodycorp.com. Failure to enforce any provision of this Agreement by either party shall not be construed as a waiver of that provision. If any provision of this Agreement is deemed invalid, illegal or incapable of being enforced under any applicable rule of law or public policy, the remainder of this Agreement shall be valid and otherwise enforceable to the fullest extent permitted by law. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, representatives, successors and permitted assigns. Each of the parties hereto agrees on behalf of itself, its successors and assigns, that it will, without further consideration, execute, acknowledge and deliver such other documents and take such other action as may be necessary or convenient to carry out the purposes of this Agreement. All provisions regarding indemnification, intellectual property ownership, warranty, liability, and limits thereon, and confidentiality shall survive the termination of this Agreement.

| Therabody, Inc. | Dominion Sourcing |
|---|---|
| By: _____ | By: _[signature]_ |
| Name: _____ | Name: David C. Valton II |
| Title: _____ | Title: IT Director |
| Date: _____ | Date: 9/12/2022 |