# EXHIBIT A

Alex E. Jones (PHV Application to be submitted)
aej@kjk.com
Kyle D. Stroup (PHV Application to be submitted)
kds@kjk.com
KOHRMAN JACKSON & KRANTZ LLP
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114
Telephone: (216) 696-8700
Facsimile: (216) 621-6536

JESSE B. LEVIN - State Bar No. 268047
jlevin@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone:  (310) 553-3000
Facsimile:   (310) 556-2920

Attorneys for Plaintiff
Therabody, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| THERABODY, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> DOMINION SOURCING, LLC, a Virginia Limited Liability Company <br><br> -and- <br><br> DAVID C. WALTON, an Individual, <br><br> Defendants. | CASE NO.: <br><br> **COMPLAINT FOR:** <br> **1. BREACH OF CONTRACT** <br> **2. FRAUD** |

Plaintiff Therabody, Inc. ("*Plaintiff*" or "*Therabody*"), by and through counsel, for its Complaint against Dominion Sourcing, LLC ("*Dominion*") and David C. Walton ("*Mr. Walton*" and together with Dominion, the "*Defendants*") states as follows:

## I.   INTRODUCTION

1. Mr. Walton, on behalf of Dominion, fraudulently induced Therabody to enter into a September 12, 2022 Therabody Terms & Conditions of Sale (Corporate Markets) agreement (the "*Agreement*"), which is attached as **Exhibit 1**, with Dominion, whereby Therabody sold its patented, high-end percussive massage devices, wellness products, and accessories (the "*Products*") to Dominion at a greatly reduced price under the guise that the Products would be used by Dominion as corporate gifts.

2. During negotiations, Therabody expressed concern that the Products would end up in marketplaces at reduced costs, thereby disrupting Therabody's Authorized Resellers (defined below), but Mr. Walton insisted that none of the Products would end up for sale.

3. In exchange for Therabody's agreement to sell Defendants the Products, Defendants unambiguously and expressly agreed to not transfer or sell the Products to any person who could reasonably be expected to sell the Products on any e-commerce marketplace.

4. Defendants also agreed to damages equal to the difference between the sale price to Dominion and Therabody's manufacturer suggested retail price ("*MSRP*") for the Products.

5. Therabody—through its own diligence—has discovered that the Products it sold to Defendants are now being sold on e-commerce marketplaces, namely Amazon.com but likely others, in breach of the Agreement.

///

## II. PARTIES

6. Plaintiff is a corporation organized under the laws of the State of Delaware with its principal place of business in California.

7. Dominion is a limited liability company purportedly formed under the laws of the State of Virginia with its principal place of business in Midlothian, Virginia. Dominion was formed in January 2018, but its status, per the Virginia Secretary of State's records, is currently "cancelled.".

8. Mr. Walton is an individual who, upon information and belief, resides at 13321 W. Salisbury Rd. in Midlothian, Virginia.

9. Plaintiff understands that Mr. Walton is the principal and owner of Dominion and used Dominion to perpetrate fraud against manufacturers, such as Therabody, by purchasing products at discounted prices, in bulk, for the stated purpose of gifts to employees, clients, and/or affiliates, but in reality, Defendants sell the purchased products at an increased price on e-commerce marketplaces or to individuals or entities who then sell the products at an increased price on e-commerce marketplaces.

## III. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this claim pursuant to 28 U.S.C. §1332(a).

11. Defendants agreed that the damages incurred by Therabody amount to the difference between Defendants' purchase price of the Products and MSRP of the Products, which is in excess of $75,000 and amounts to $4,656,304.

12. Additionally, Therabody is considered a Delaware and California citizen whereas Defendants are all Virginia citizens.

13. Accordingly, complete diversity exists.

14. Venue is proper because, in the Agreement, Therabody and Defendants agreed that any action seeking to enforce or construe the terms of

the Agreement would be subject to California law. In addition, a substantial part of the events, i.e. the transaction between the parties, occurred in this District. *See* 28 U.S.C. § 1391(b)(2).

## IV.   BACKGROUND

### *Plaintiff's Business*

15.   Plaintiff sells the Products on the internet through its website and e-commerce marketplaces, such as Amazon.com, or in traditional brick-and-mortar establishments and directly to consumers or other businesses, such as Dominion, in interstate commerce.

16.   Plaintiff also sells to and through certain wholesalers and authorized resellers (each, an "***Authorized Reseller***" and collectively, the "***Authorized Resellers***").

17.   The Products bear various trademarks validly registered with the United States Patent and Trademark Office and are protected by various patents.

18.   Plaintiff strives to ensure that consumers of its Products are receiving authentic Products from either Plaintiff itself or one of its reputable Authorized Resellers.

19.   As a result, Plaintiff has become an industry leader in the market, and the Products are synonymous with high-end, top-quality percussive massage devices.

### *Therabody and Defendants Enter into the Agreement*

20.   On September 12, 2022, Dominion entered into the Agreement with Therabody, and Mr. Walton executed the Agreement on behalf of Dominion.

21.   The Agreement outlined the terms and conditions under which Therabody would sell the Products to Defendants.

22.   Therabody granted a limited license to Defendants, provided instructions to Defendants as to how to purchase the Products, and obligated

Defendants to conduct its business in a manner that reflected favorably on the Products and Therabody, among other things. *See* Agreement at Sections 2, 4, and 6.

23. In Section 3 of the Agreement, Defendants expressly agreed that, by purchasing the Products, Defendants would be prohibited from reselling the Products.

24. Specifically, Section 3 provides:

> The sale of Products by [Defendants] is strictly prohibited. [Defendants] acknowledge[] and agree[] that [they] shall not actively sell or promote any Products. In order to ensure the same and proper handling of the products, and to preserve the luxury brand image of the Products, [Defendants] agree[] not to sell Products on or via any third-party market place e-commerce websites, including but not limited to Amazon or E-Bay, and not sell any Products to operators of e-commerce websites for sale on such marketplace websites, and not sell or otherwise transfer Products to any person who could reasonably be expected to sell the products on any such marketplace website.

*See* Agreement at Section 3.

25. Section 3 is an integral part of the Agreement, and Therabody specifically bargained for this Section due to the harm caused by the unauthorized resale of the Products on e-commerce websites, which is precisely why Therabody only permits the resale of its Products through Authorized Resellers.

26. In this e-commerce age, unauthorized resellers obtain products from a variety of sources and then sell products anonymously online.

27. Many times, the products sold by unauthorized resellers may be materially different than those sold by the brand or authorized resellers. In some instances, Therabody has also determined that some products sold by unauthorized resellers are counterfeit devices and not genuine Therabody products.

28. Specifically, even if the products are genuine, unauthorized resellers may sell products without warranties, of an inferior quality, that are defective, and in violation of a business's rights in its intellectual property.

29. Indeed, on the Amazon Marketplace, all sales of a particular product are sold under a unique Amazon Standard Identification Number such that consumers do not know whether a product is sold by an unauthorized reseller or a legitimate reseller.

30. Because the unauthorized resellers are able to sell without disclosing their identity, manufacturers and brands experience challenges in communicating with the unauthorized resellers to alert them of material differences.

31. Ultimately, consumers are harmed as they unknowingly buy a materially different product compared to a legitimate product from the manufacturer.

32. With this in mind, Therabody specifically bargained for, and Defendants agreed to, Section 3 of the Agreement.

### *Defendants Begin Purchasing Products*

33. Defendants purchased the Products from Therabody, pursuant to the Agreement, under the guise that Dominion would be using the Products as gifts to its employees, business partners, and/or affiliates.

34. First, on September 2, 2022, Dominion placed an order (Order No. SO1162234) for 10,500 Products in the amount of $1,422,500 (the "**First Order**"), which is attached as **Exhibit 2**.

35. Then on October 12, 2022, Dominion placed another order (Order No. SO1190190) for 9,092 Products in the amount of $1,620,004 (the "*Second Order*"), which is attached as **Exhibit 3**.

36. On December 14, 2022, Dominion placed a third order (Order No. SO1309224) for 1,000 Products in the amount of $125,000 (the "*Third Order*"), which is attached as **Exhibit 4**.

37. Lastly, on January 10, 2023, Dominion placed a fourth order (Order No. SO1354224) for 4,000 Products in the amount of $670,000 (the "*Fourth Order*") (collectively, the "*Orders*"), which is attached as **Exhibit 5**.

38. Dominion placed the Orders subject to the terms and conditions in the Agreement, including the prohibition on the resale or transfer of the Products as set forth in Section 3.

39. In total, Dominion purchased 24,592 Products for $3,837,504 from Therabody.

40. If the Products sold to Dominion were purchased at MSRP the total purchase price of the Products would amount to $8,493,808.

41. A detailed listing of the Products, quantities purchased, purchase price paid by Defendants and the MSRP of each Product is set forth on **Exhibit 6**.

*Defendants Sell or Transfer the Products,*
*Which are Discovered in E-Commerce*

42. As detailed above, due to the current state of e-commerce marketplaces, with unauthorized resellers selling materially different products, Therabody actively monitors the sales of its Products.

2270151

43. In particular, Therabody conducts test buys of its Products and tracks its Products through its channels using product identification numbers.

44. Therabody kept records of the product identification numbers for the Products it sold to Defendants.

45. After Defendants purchased the Products from Therabody, Therabody conducted test buys of Products listed for sale on e-commerce marketplaces.

46. Specifically, on January 24, 2023, Therabody placed an order for a Product—a Theragun Prime—from a reseller doing business as Caresour Official Store on the Amazon Marketplace.

47. Therabody traced this Product through its product identification numbers to the Products purchased by Defendants that were subject to the Agreement, including Section 3.

48. As a result, Therabody discovered that Defendants are either selling or offering for sale the Products on e-commerce marketplaces through one or more affiliates or have transferred the Products to others to then sell the Products on e-commerce marketplaces.

### *Defendants Agreed That Therabody's Damages Amount to $4,656,304*

49. Defendants breached (and are continuing to breach) Section 3 of the Agreement by selling or offering for sale the Products through e-commerce or transferring the Products to others who Defendants reasonably knew would sell the Products on e-commerce marketplaces.

50. Defendants specifically agreed that if Defendants violated Section 3, "[Defendants] shall pay Therabody…the difference between the purchase price paid by [Defendants] for the Products and the MSRP for such Products."

51. The purchase price paid by Defendants for the Products amounted to $3,837,504.

52. The MSRP of the Products purchased by Defendants amounts to $8,493,808.

53. Accordingly, the difference between the price paid by Defendants for the Products and the MSRP for the Products equals $4,656,304.

*Defendants Ignore Therabody's Request for*

*Immediate Payment From Defendants*

54. As a result of the foregoing, Therabody sent a February 7, 2023 letter to Mr. Walton and Dominion (the "*Letter*"), which is attached as **Exhibit 7**.

55. The Letter set forth the terms of the Agreement and Orders, as well as the purchase price and MSRP of the Products, and requested immediate payment.

56. To date, Therabody has received no response to the Letter from Defendants.

57. Accordingly, Plaintiff initiated this action.

### V. CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

58. Therabody incorporates the preceding paragraphs as if fully restated herein.

59. Therabody and Defendants entered into a legally valid and binding contract—the Agreement—on September 12, 2022.

60. Therabody and Defendants also entered into additional legally valid and binding contracts in the form of the Orders.

61. Therabody fulfilled all of its obligations set forth in the Agreement and Orders, including delivery of the Products.

62. Defendants have willfully and materially breached the Agreement by, *inter alia*, selling or offering for sale the Products in e-commerce

1 marketplaces or transferring the Products to individuals who were reasonably
2 known to Defendants to then sell or offer for sale the Products on e-commerce
3 marketplaces.

4     63. Defendants did so without any legal excuse.

5     64. Therefore, Defendants have materially breached the Agreement
6 and Orders.

7     65. As a result of Defendants' actions, Therabody has been harmed in
8 the amount of $4,656,304, which Defendants agreed to, as well as additional
9 costs and expenses associated with this action.

## SECOND CAUSE OF ACTION
## (FRAUD)

    66. Therabody incorporates the preceding paragraphs as if fully restated herein.

    67. Mr. Walton and Dominion made false representations of material fact when they, *inter alia*, represented to Therabody that the Products they purchased were for their employees, clients, and/or affiliates and to be used as corporate gifts, when in reality Defendants had no intention of gifting the Products and instead intend to resell the Products or transfer the Products to individuals reasonably known to Defendants to then sell the Products on e-commerce marketplaces.

    68. Defendants made these false representations of material fact intentionally and knowingly because they knew that Therabody's agreement with its Authorized Resellers and the Agreement prevented Defendants from selling the Products on e-commerce marketplaces or transfer the Products to individuals reasonably known to Defendants to sell the Products on e-commerce marketplaces.

69. With these false representations, Defendants intended to, and did, mislead Therabody into believing that the Products purchased would be used as corporate gifts.

70. Therabody reasonably relied on Defendants representations that Defendants were purchasing the Products to then use as corporate gifts for Defendants' employees, clients, and/or affiliates.

71. As a result of Defendants' false representations of material fact, Therabody was induced to selling the Products to Defendants with the Orders and subject to the Agreement.

72. As a result of Defendants' false representations of material fact, Therabody has been damaged in an amount of $4,656,304, which Defendants agreed to, plus punitive damages, attorneys' fees, and the costs and expenses associated with bringing this action pursuant to California law.

## VI. PRAYER

**WHEREFORE,** Plaintiff prays for judgment as follows:

A. As to the First Cause of Action, award compensatory damages in an amount equal to or greater than $4,656,304, but ultimately to be determined at trial, as well as attorneys' fees and costs and expenses associated with this action;

B. As to the Second Cause of Action, award compensatory damages in an amount equal to or greater than $4,656,304, but ultimately to be determined at trial, as well as punitive damages, attorneys' fees, and the costs and expenses associated with this action pursuant to California Civil Code Section 3294; and

///
///
///
///

1    C.    Any other relief that this Court deems just and proper.

DATED: March 20, 2023             Respectfully submitted,

                                  KOHRMAN JACKSON & KRANTZ LLP

                                  */s/ Alex E. Jones*
                                  ALEX E. JONES
                                  KYLE D. STROUP

                                  GLASER WEIL FINK HOWARD
                                     AVCHEN & SHAPIRO LLP

                                  */s/ Jesse B. Levin*
                                  JESSE B. LEVIN
                                      Attorneys for Plaintiff
                                      Therabody, Inc.