# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| THERABODY, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:23-cv-545 |
| DAVID C. WALTON, | ) ) ) |
| Defendant. | ) ) ) ) ) |

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT DAVID C. WALTON'S MOTION TO DISMISS

Plaintiff Therabody, Inc. ("*Plaintiff*" or "*Therabody*") requests that the Court deny the Motion to Dismiss (ECF No. 14) (the "*Motion*") filed by Defendant David C. Walton ("*Defendant*" or "*Walton*"). Therabody sufficiently pleaded the allegations of its single claim for fraud in the inducement against Walton. Specifically, this Court should deny the Motion because: (1) Therabody pleaded the quintessential elements—the who, what, when, where, and how—for its claims of fraud; (2) The economic loss doctrine is inapplicable to claims for fraud in the inducement; and (3) Walton may be held liable for fraud as an officer of Dominion Sourcing, LLC ("*Dominion*").

## I. INTRODUCTION.

Therabody initiated this action because Walton fraudulently induced Therabody to sell to Dominion Therabody's patented, high-end percussive massage devices (the "*Products*") at a greatly reduced price. (*See* ECF No. 1 ("*Compl.*") at ¶ 1.) Prior to entering into a contract, Walton negotiated discounted prices under the guise that the Products would be used by Dominion as corporate gifts. *Id.* Walton and Dominion then turned around and resold or otherwise transferred

the Products to individuals or entities that they reasonably knew or should have known would sell the Products on ecommerce marketplaces, such as Amazon.com. *Id.* at ¶ 5. Walton and Dominion knowingly did so in violation of Section 3 of the September 12, 2022 Therabody Terms & Conditions of Sale (Corporate Markets) agreement (the "***Agreement***"), for which Therabody specifically bargained. *See id.* at ¶¶ 5, 19-21. Walton knew that without misrepresenting his reasons for acquiring the Products, Therabody would have never entered into the Agreement. Accordingly, as pleaded in the Complaint, Walton committed textbook fraud to induce Therabody into entering into the Agreement and thereby selling Dominion the Products.

Prior to this litigation, on March 20, 2023, Plaintiff filed another lawsuit, styled as *Therabody, Inc. v. Dominion Sourcing, LLC, et.al.*, bearing case number 2:23-cv-02086-SB-AS in the United States District Court for the Central District of California. On June 23, 2023, Plaintiff voluntarily dismissed the lawsuit, <u>without prejudice</u>, against both Walton and Dominion as they requested, *inter alia*, that the dispute be heard in arbitration pursuant to the Agreement. Compl. at ¶¶ 63-65. Plaintiff then attempted to initiate an arbitration proceeding, but Walton and Dominion refused to consent. *Id.* at ¶ 66.

Plaintiff initiated this action individually against Walton based on his fraudulent misrepresentations which induced Therabody to enter into the Agreement. This claim remains independent of any breach of contract claim that is subject to the Agreement's arbitration clause. Walton failed to timely respond to the Complaint after being served, and Therabody requested that the Clerk enter default. See ECF No. 7. Walton then requested an extension of time to respond to the Complaint (ECF Nos. 9, 10), and Walton filed the instant Motion.

## II. ALLEGED FACTS.

### A. Defendant Fraudulently Induced Plaintiff to Enter into the Agreement.

In August of 2022, Walton contacted Therabody inquiring about purchasing the Products as gifts to employees, vendors, and clients and represented that Walton was looking to "source a lot of [Therabody] product." Compl. at ¶¶ 29, 31, 33-38, Exh. 3. Particularly, Walton communicated to Plaintiff that the purpose of purchasing the Products was part of a "huge company wide campaign" for Defendant's company, Dominion, and that the campaign had included "other larger companies" and affiliates. *Id.* at ¶ 31, Exh. 2.

Walton then negotiated a discounted price for the Products with Plaintiff's Vice President of Corporate Markets. *See id.* at ¶ 33. Under the guise of purchasing the Products as a "huge company wide campaign" for corporate gifts, Therabody sold a total of 24,592 Products to Dominion for $3,837,504 as a result of Walton's statements regarding the intended purpose for the Products. The manufacturer's suggested retail price of those Products is $8,493,808. *Id.* at ¶¶ 46-48, Exh. 9.

Specifically, Dominion ordered an initial 10,500 Products for $1,422,500 on September 2, 2022. *Id.* at ¶ 41, Exh. 4. On October 12, Dominion placed another order for 9,092 Products in the amount of $1,520,004. *Id.* at ¶ 42, Exh. 5. Then on December 14, 2022, Dominion placed a third order for 1,000 Products in the amount of $125,000. *Id.* at ¶ 43, Exh.6. And on January 10, 2023, Dominion placed a fourth and final order for 4,000 Products in the amount of $670,000. *Id.* at ¶ 44, Exh. 7.

### B. Per the Agreement, the Products Were Not to be Resold or Transferred, but the Products Are Later Found in Ecommerce.

As a material basis for selling the Products to Dominion at a discounted price, Therabody negotiated for Section 3 of the Agreement. *Id.* at ¶ 21. Per the plain and unambiguous language of

Section 3, Dominion was prohibited from reselling any of the Products or transferring any of the Products to any individual or entity that could reasonably be expected to sell the Products on any ecommerce marketplace, including Amazon.com. *Id.* at ¶ 20.

As part of its business, Plaintiff routinely analyzes ecommerce marketplaces and conducts test purchases to monitor for the unauthorized sale of its Products. Compl. at ¶¶ 49-52. In January of 2023, as part of its routine monitoring, Plaintiff purchased one of its Products, a Theragun Prime, from Amazon reseller Caresour Official Store. *Id.* at ¶ 53. Using product identification numbers, Plaintiff traced the Theragun Prime it purchased from Caresour Official Store back to the Products sold to Dominion. *Id.* at ¶ 54. Plaintiff reasonably suspects that additional Products it sold to Dominion have found their way into ecommerce marketplaces in violation of Section 3 of the Agreement.

Upon discovering that Section 3 of the Agreement had been violated, Plaintiff demanded immediate payment of the difference between the manufacturer suggested retail price of the Products and the discounted price that was paid for the Products as set forth in Section 3 of the Agreement, but Walton refused. *Id.* at ¶¶ 60-62. Consequently, Plaintiff initiated the first action with the Central District of California and then filed the instant lawsuit to prosecute Walton for fraudulently inducing Therabody to enter into the Agreement. For the reasons described herein, the Court should deny the Motion and permit this matter to proceed to discovery.

### III. LAW AND ANALYSIS.

Therabody sufficiently pleaded its one-count Complaint for fraud in the inducement against Walton. It should be noted that, contrary to Defendant's assertions, Plaintiff is seeking to hold Defendant liable for defrauding Therabody and not for breach of Section 3 of the Agreement. To that end, Plaintiff's claim for fraud contains the particular statements required under Fed. R. Civ. P. 9, and fraud in the inducement is a well-established exception to the economic loss doctrine.

Further, as an officer of Dominion, Defendant may be held liable independently for his own fraudulent conduct which necessitated this litigation. Therefore, the Motion should be denied.

    A.    **<u>Legal Standard for a Motion to Dismiss a Complaint for Fraud.</u>**

"Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim; it 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Spencer v. Macado's, Inc.*, 399 F. Supp. 3d 545, 547 (W.D. Va. July 8, 2019) (quoting *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). Indeed, "[t]he Court must take all facts and reasonable inferences in favor of the plaintiff, disregard any legal conclusions, and not credit any formulaic recitations of the elements." *Spencer*, 399 F. Supp. 3d at 547 (citing *Iqbal v. Ashcroft*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

Under Rule 8(a)(2), a plaintiff needs only to allege "a short and plain statement of the claim showing that the pleader is entitled to relief so as to give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Hart v. Scholl's Wellness Co., LLC*, Case No. 2:21-cv-497, 2022 U.S. Dist. LEXIS 238918, *6 (E.D. Va. July 29, 2022). "Fair notice is provided by setting forth enough facts for the complaint to be plausible on its face and to raise relief about the speculative level on the assumption that all allegations in the complaint are true." *Id*. While "[a] plausibility standard is not analogous to a probability requirement…there must be more than a small possibility that the defendant is liable." *Trotman v. Am Retail Group*, Case No. 4:20-cv-125, 2020 U.S. Dist. LEXIS 253426, at *6 (E.D. Va. Nov. 12, 2020) (citing *Ashcroft*, 556 U.S. at 678).

While Fed. R. Civ. P. 8 requires little more than notice to the defendant of a plaintiff's claims, Fed. R. Civ. P. 9 states that where a plaintiff alleges a claim for fraud, the plaintiff "must

state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Parkman v. Elam*, Case No. 3:08-cv-690, 2009 U.S. Dist. LEXIS 21578, at *7 (E.D. Va. Mar. 17, 2009) (reasoning that "[c]laims of fraud…must satisfy a more stringent pleading standard."). However, a plaintiff need only state "the time, place, and contents of the false representations" and "the identity of the person making the misrepresentation and what he obtained hereby." *Id.* (quoting *Harrison v. Savannah Westinghouse River Co.,* 176 F.3d 776, 783-84 (4th Cir. 1999)); *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (stating that a plaintiff asserting a fraudulent inducement claim need only state the "who, what, when, where, and how of the alleged fraud.") (internal quotations omitted). Even so, Plaintiff has sufficiently pleaded its Complaint for fraud as the Court should "liberally construe" the Complaint "in favor of plaintiff." *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 391 (E.D. Va. Sep. 18, 2020).[1]

### B. Therabody Pleaded the "Who, What, When, Where, and How" for Its Claim of Fraud.

Plaintiff has satisfied the requirements of Rule 9(b) in pleading its fraud claim. Contrary to Defendant's assertions, to plead its allegations with sufficient particularity required under Rule 9(b), Plaintiff's Complaint need only to "describe the time, place, and contents for the false representation as well as the identity of the person making the misrepresentation and what he obtained thereby." *Kellog Brown & Root, Inc.,* 525 F.3d at 379; *see Entrepranuer Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*, Case No. 3:22-cv-529, 2023 U.S. Dist. LEXIS 142011, at *23 (E.D. Va. July 7, 2023).

---

[1] Should this Court disagree, Plaintiff requests an opportunity to amend the Complaint in accordance with Fed. R. Civ. P. 15.

Here, Plaintiff has alleged the quintessential elements of fraud to withstand the Motion. First, Plaintiff has identified the person making the misrepresentation—Walton—and what he obtained thereby—discounted prices for the Products. *See, e.g.,* Compl. at ¶¶ 29-30, 56-58, Exhs. 4-8. Indeed, the Complaint details that Walton made multiple misrepresentation to Therabody on a number of occasions to ultimately purchase the Products at reduced prices and induce Therabody to enter into the Agreement.

Next, Plaintiff sufficiently described the time, place, and contents of the fraud. Plaintiff alleged Defendant communicated with Plaintiff's representatives via telephone and email beginning on August 23, 2023, wherein Walton was attempting to "source a lot of [Therabody] product" for corporate gifts. *See, e.g.,* Compl. ¶¶ 29-39, Exhs. 2-3. Plaintiff has also shown that via a separate, September 1, 2022 email correspondence, Walton continued misrepresenting his intentions for purchasing the Products. *See id.* at ¶¶ 31-33. Plaintiff further alleged that Walton requested discounted prices for the Products for a "huge company wide campaign." *Id.* at ¶¶ 34-35, Exh. 3. Walton also compared his requests to Therabody with a recent purchase for "30,000 computers from [S]taples for [Dominion's] employees and drivers." *Id.* at ¶ 36, Exh. 3. Walton also teased further sales with the "same group of companies." *Id.* at ¶ 35, Exh. 3.

Ultimately, Plaintiff discovered Walton's fraud through its routine monitoring of ecommerce marketplaces. Therabody purchased one of the Products from an Amazon seller and traced the purchased-Product back to those Products sold to Walton and Dominion. *See id.* at ¶ 53. The resale or other transfer of the Products for resale is strictly prohibited under the Agreement's Section 3 and was contrary to Walton's pre-Agreement statements. *Id.* at ¶ 54. Understanding that Therabody would not sell the Products without Section 3's restriction on resale, Walton made material false misrepresentations to Therabody to induce Therabody into entering the Agreement.

Accordingly, the Court should deny the Motion as Therabody as sufficiently pleaded its claim of fraud with particularity under Fed. R. Civ. P. 9(b).

### C. The Economic Loss Doctrine Does Not Bar Plaintiff's Fraud Claim.

Plaintiff's claim for fraud in the inducement is not barred by the doctrine of economic loss. Virginia and the Fourth Circuit both recognize the exception to the economic loss doctrine for fraud in the inducement. *See S. Coal Sales Corp. Xcoal Energy & Res.,* Case No. 7:12-cv-00265-JCT, 2013 U.S. Dist. LEXIS 13469, at *12 (W.D. Va. Feb. 1, 2013)). "[W]hen the tort alleged is fraud perpetrated before a contract between the parties came into existence, it cannot logically follow that the source of the duty breached was the contract. Therefore, the economic loss rule does not bar claims of fraud in the inducement." *County of Grayson v. Ra-Tech Servs.,* Case No. 7:13-cv-00384, 2013 U.S. Dist. LEXIS 161323, at *10-11 (W.D. Va. Nov. 12, 2013) (citing *Abi-Najm v. Concord Condominium*, 280 Va. 350, 363, 699 S.E.2d 483 (2010); *Cutaia v. Radius Eng'g intern, Inc.,* Case No. 5:11-cv-00077, 2013 U.S. Dist. LEXIS 142320, at *4 (W.D. Va. Oct. 2, 2013); *S. Coal Sales Corp.,* 2013 U.S. Dist. LEXIS 13469, at *12 (W.D. Va. Feb. 1, 2013)). Indeed, the exception to "the economic loss rule applies only when the fraudulent inducement is committed through misrepresentations concerning present or pre-existing facts," such as when "'a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact.'" *Ra-Tech Servs.*, 2013 U.S. Dist. LEXIS 161323, at * 11 (quoting *Marcano v. Fox Motors, Inc.,* Case No. 1:11-cv-16, 2011 U.S. Dist. LEXIS 38367, at *4 (E.D. Va. Apr. 7, 2011) ("One well-settled instance, both as a matter of law and as a matter of logic, where the duty allegedly violated arises outside of contract and, thus, may support a cause of action for fraud is where the allegedly fraudulent representation occurred before the contract came into existence.").

In *Marcano*, the fraud claim was not barred by the doctrine of economic loss where the defendant had made misrepresentations about a vehicle, such as that the vehicle was in good condition and that the defendant had been driving the vehicle and was familiar with its condition, in order to induce the plaintiff into purchasing the vehicle. *See Id.* at *10. The *Marcano* defendant's "allegedly fraudulent misrepresentations *preexisted* the contract and were a basis of its formation." *Id.* (emphasis in original).

Similarly, here, Defendant's misrepresentations occurred not only before the Agreement was formed but were also a basis for Therabody entering into the Agreement. Via email correspondence on August 23, 2022 and September 1, 2022, Defendant misrepresented the reasons for purchasing the Products by indicating they would be for gifts, rather than the actual reason—reselling the Products through ecommerce channels. *See* Compl. at Exhs. 2 and 3. Additionally, Walton communicated with Therabody via telephone as well in August and September 2022. *Id.* at ¶ 30. The Agreement was not formed until September 12, 2022, and the first September 2, 2022 order of 10,500 Products for $1,422,500 occurred after Walton's misrepresentations to Therabody. *See id.* at ¶ 41. Walton's misrepresentations also served as a basis for Therabody to offer the discounted Products' prices to Walton and Dominion. *See id.* at ¶¶ 38-40. Therefore, and just as in *Marcano*, Walton's misrepresentations pre-existed the Agreement and the Court should deny the Motion as the economic loss doctrine does not bar Plaintiff's claim for fraud in the inducement.

### D. <u>Walton Actively Defrauded Therabody and May Be Held Liable.</u>

Walton cannot hide behind Dominion for his fraudulent conduct or seek to escape liability because he, individually, was not a party to the Agreement. A corporate officer "can be held personally liable if that person actively participates in the commission of illegal activity," which includes perpetrating fraud. *Brown Mfg. Corp. v. Alpha Lawn & Garden Equip., Inc.*, 219 F. Supp.

9

2d 705, 708 (E.D. Va. 2002); *see also Greenberg v. Commonwealth ex rel. AG,* 255 Va. 594, 599, 499 S.E.2d 266, 269 (1998) (stating that where a business violates the law, all who participate in the violation can be held liable, including its officers and agents). Additionally, it is well established that the corporate veil may be pierced, and owners may be held personally liable where the individual uses a company to perpetrate fraud. *See Brown Mfg. Corp.*, 219 F. Supp. 2d at 708.

In addition, "a corporation may be held liable co-extensively with the officer or employee actually responsible for the fraudulent conduct engaged in while in the course of employment and while transacting corporate business." *American General Ins. Co. v. Equitable General Corp.*, 493 F. Supp. 721, 747 (E.D. Va. 1980). "Individuals can still be held liable for their own torts, even if they were acting as an agent on behalf of their employer." *Kraze Burger, Inc. v. Kraze Int'l, Inc.*, Case No. 1:19-cv-0717, 2023 U.S. Dist. LEXIS 116521, at *21 (E.D. Va. May 19, 2023) (citing *Van Buren v. Grubb*, 284 Va. 591-92, 733 S.E. 2d 919 (2012) (stating that "[i]t has long been settled in Virginia that employers and employees are deemed to be jointly liable and jointly suable for the employee's wrongful acts.").

Defendant, acting as an officer and/or employee of Dominion, specifically sought out Therabody to source the Products. Defendant then intentionally misrepresented his reasons for purchasing the Products as part of "a huge company wide campaign" with "other larger companies" such as a recent purchase of "30,000 computer from [S]taples for [Dominion's] employees and drivers," in order to receive discounted prices for the Products. *See* Compl. at Exhs. 2 and 3. Defendant made these misrepresentations with the intention to resell the Products or transfer the Products so that they could be resold, as confirmed by Therabody during its routine ecommerce monitoring process. *Id.* at ¶¶ 52-55. Moreover, Plaintiff brings this Complaint seeking redress for Walton's fraud—not for Dominion's breach of contract related to Section 3 of the

Agreement. As well-established Virginia law dictates, Walton may be held liable for his unlawful and deceitful business tactics as an active participant in the fraud and an officer and/or employee of Dominion. *See Van Buren v. Grubb*, 284 Va. 591-92. Accordingly, Defendant's position on this point fails, and this Court should deny the Motion.

### E. Defendant's Fraudulent Misrepresentations Nullifies Section 8 of the Agreement's Limitations and Disclaimers.

The Court is not confined to Section 8 of the Agreement because Defendant's fraudulent misstatements subject the Parties to terms outside of the Agreement. "In a claim for fraud, a party to a contract may point to representations outside of the contract to show that those representations induced the party to enter into the contract, even if the contract itself contains a clause limiting or disclaiming liability for such representations." *FS Photo, Inc. v. Picturevision Inc.*, 61 F. Supp. 2d 473, 481 (E.D. Va. Sep. 24, 1999); *see also Hitachi Credit Corp. v. Signet Bank*, 166 F.3d 614, 630-31 (4th Cir. 1999) ("A buyer can recover for fraudulent inducement where the contract contains a general disclaimer of warranties and liability."). Thus, limitations and disclaimers of representations and warranties, such as those in Section 8 of the Agreement, are not the end-all be-all where a party to the agreement was fraudulently induced into entering the agreement. *Id.*; *see also Delta Star, Inc. v. NSTART Elec. & Gas Corp.*, Case No. 6:05-cv-00022, 2006 U.S. Dist. LEXIS 61196, at *14-15 (W.D. Va. Aug. 29, 2006) (explaining that a party may not escape liability for misrepresentations by resorting to damage limitation and integration clauses).

Put simply, Walton knowingly and purposefully caused Therabody to enter into the Agreement by falsely claiming to intend to use the Products as corporate gifts. Without such fraudulent misrepresentations, Therabody would not have entertained the thought of selling 24,592 Products to Walton and Dominion for $3,837,504 while the suggested retail price of the Products purchased by Walton and Dominion was $8,493,808. *See* Compl. at ¶¶ 29-48. Walton's scheme to

defraud Therabody allows the Court to look beyond Section 8 of the Agreement and focus on Walton's unlawful business tactics. Consequently, Defendant cannot now use the contract to escape liability for fraudulently inducing Plaintiff to rely on terms outside of the Agreement. *See Hitachi Credit Corp.*, 166 F.3d at 630-31; *FS Photo, Inc.*, 61 F. Supp. 2d at 481; *Delta Star, Inc.*, 2006 U.S. Dist. LEXIS 61196, at *14-15. As a result, Defendant should not be permitted to rely on Section 8 of the Agreement to escape liability, and the Court should deny the Motion.

## IV. CONCLUSION.

For the reasons set forth herein, the Court should deny the Motion. As an active participant in the fraud and an officer and/or employee of Dominion, Walton may be held liable for his unlawful and deceitful business tactics. Moreover, Plaintiff brings this Complaint seeking redress for Walton's fraud—not for Dominion's breach of contract related to Section 3 of the Agreement. In turn, Plaintiff sufficiently pleaded the quintessential elements of fraud in the inducement, which is specifically carved out of the doctrine of economic loss. Accordingly, the Court should deny the Motion.

Respectfully submitted,

**THERABODY, Inc.**

By:/s/
William D. Prince IV, Esquire (VSB No. 77209)
Rachel W. Adams, Esquire (VSB No. 92605)
*Thompson* McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel.: (804) 649-7545
Fax: (804) 780-1813
Email: wprince@t-mlaw.com
Email: radams@t-mlaw.com

Alex E. Jones, Esquire (to be admitted *pro hac vice*)
Kyle D. Stroup, Esquire (to be admitted *pro hac vice*)
KOHRMAN JACKSON & KRANTZ LLP
1375 East Ninth Street, 29th Floor
Cleveland, Ohio 44114
Telephone: (216) 696-8700
Email: aej@kjk.com
Email: kds@kjk.com

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which sends a Notification of Electric Filing (NEF) to the following counsel of record:

Belinda D. Jones, Esq.
Elizabeth S. Olcott, Esq.
Christian & Barton, LLP
901 East Cary Street, Suite 1800
Richmond, Virginia 23219
bjones@cblaw.com
lolcott@cblaw.com

David Rubenstein, Esq. (*Admitted pro hac vice*)
Rubenstein Business Law
100 Horizon Center Blvd.
Hamilton, New Jersey 08691
drubenstein@rubensteinbusinesslaw.com

*Counsel for Defendant*

/s/
William D. Prince IV, Esquire (VSB No. 77209)
Rachel W. Adams, Esquire (VSB No. 92605)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Tel: (804) 649-7545
Fax: (804) 780-1818
Email: wprince@t-mlaw.com
Email: radams@t-mlaw.com

*Counsel for Plaintiff*