IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THERABODY, INC.,            )
      Plaintiff,            )
                  )
          v.            )      Civil Action No.  3:23cv545 (RCY)
                  )
DAVID C. WALTON,            )
      Defendant.            )
                  )

## MEMORANDUM OPINION

This matter comes before the Court on Defendant David C. Walton's Motion to Dismiss (ECF No. 14).  The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated herein, the Court will deny Defendant's Motion to Dismiss (ECF No. 14).

## I. BACKGROUND

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff."  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Such a standard, however, does not require accepting any unreasonable inferences or plaintiff's legal conclusions.  *Id.*  Additionally, a court may consider any documents attached to the complaint.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).  Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows.

**A. Factual Background**

Plaintiff Therabody, Inc. ("Plaintiff" or "Therabody") is a company that sells "high-end percussive massage devices, wellness products, and accessories" (the "Products"). Compl. ¶ 1. Plaintiff sells the Products "on the internet through its website and e-commerce marketplaces . . . or in traditional brick-and-mortar establishments and directly to consumers or other businesses." *Id.* ¶ 11. Plaintiff also sells the Products "to and through certain wholesalers and authorized resellers." *Id.* ¶ 12. Given the nature of its business model, Plaintiff has significant concerns about the "unauthorized resale of the Products on e-commerce websites" and "only permits the resale of its products through [a]uthorized [r]esellers." *Id.* ¶ 21; *see id.* ¶¶ 14–15, 21–28. In light of these concerns, and "due to the current state of e-commerce marketplaces, with unauthorized resellers selling materially different products," Plaintiff also "actively monitors the sale of its Products." *Id.* ¶ 49. To that end, Plaintiff conducts "test buys of its Products." *Id.* ¶ 50. These test buys permit Plaintiff to track the sale and/or flow of its Products by reference to the Products' respective "product identification numbers." *Id.* ¶ 50.

On August 23, 2022, David C. Walton ("Defendant" or "Walton") contacted Plaintiff's representatives to "source a lot of [the Products] for the upcoming fall and winter." Compl. Ex. 2 ("Email Correspondence") 13[1], ECF No. 1-3; *see* Compl. ¶¶ 29–30. Defendant was then put in contact with Andrew Spellman ("Spellman"), Plaintiff's Vice President of Corporate Markets. *See* Compl. ¶¶ 32–33. Thereafter, Defendant and Spellman exchanged communications regarding bulk purchases of the Products.[2] *See id.* ¶¶ 29–40. In the course of these communications, Defendant

---

[1] For this and all other filings, the Court utilizes the pagination assigned by the CM/ECF system and not the pagination appearing on the original document.

[2] Defendant communicated with Plaintiff's representatives both over the phone and via email during this timeframe. Compl. ¶ 30.

"represented, falsely," that his company—Dominion Sourcing, LLC ("Dominion")[3]—was "purchasing the Products for Dominion's affiliates, clients, and employees." *Id.* ¶ 31.

For instance, Defendant "enticed [Plaintiff] to complete the sale by teasing [Plaintiff] that it would be a 'huge company wide campaign' and a follow-up sale with the 'same group of companies.'" *Id.* ¶ 35 (quoting Email Correspondence 7). Defendant also "compared these transactions with [Plaintiff] to another . . . transaction Dominion purportedly completed for '30,000 computers from [S]taples for [Dominion's] employees and drivers.'" *Id.* ¶ 36 (quoting Email Correspondence 3). Defendant noted that his and Dominion's goal was to "*give away* a branded product and get the best price." Email Correspondence 10 (emphasis added). Contemporaneously with these email communications, Defendant represented to Plaintiff that "the Products Dominion intended to purchase would [likewise] be used for Dominion's employees, clients, and affiliates." *Id.* ¶ 37. These representations led Plaintiff to understand that "Dominion was purchasing the Products to be used as gifts for its employees, clients, and affiliates." *Id.* ¶ 38. In reality, however, Defendant and Dominion "had no intention of gifting the Products." *Id.* ¶ 70. Instead, at the time Defendant made these representations, he and Dominion "intended to resell . . . or transfer the Products to individuals reasonably known to [Defendant] and Dominion to then sell the Products on e-commerce marketplaces." *Id.*

Ultimately, Defendant's false representations "induce[d]" Plaintiff to enter into the Therabody Terms & Conditions of Sale (Corporate Markets) Agreement (the "Agreement"). *Id.* ¶¶ 1, 40; *see id.* ¶¶ 40, 70 ("[B]ut for [Defendants] representations and the Agreement's Section 3, [Plaintiff] would not have entered into the Agreement."). The Agreement "outlined the terms and conditions under which [Plaintiff] would sell the Products to Dominion." *Id.* ¶ 17. Among other

---

[3] Defendant is the "principal and owner of Dominion." Compl. ¶ 7.

things, the Agreement granted a limited license to Dominion, "provided instructions to Dominion as to how to purchase the [P]roducts, and obligated Dominion to conduct its business in a manner that reflected favorably on [Plaintiff]." *Id.* ¶ 18.  And in Section 3 of the Agreement, "Dominion expressly agreed that, by purchasing the Products, Dominion would be prohibited from reselling the Products." *Id.* ¶ 19.  Plaintiff "specifically bargained for" Section 3 of the Agreement because of "the harm caused by the unauthorized resale of the Products." *Id.* ¶ 21.

Following execution of the Agreement, "Dominion then purchased the Products from [Plaintiff] . . . under the guise that Dominion would be using the Products as gifts to its employees, business partners, and/or affiliates." *Id.* ¶ 40.  Dominion placed its first order under the Agreement on September 2, 2022, for 10,500 Products in the amount of $1,422,500 (the "First Order").  *Id.* ¶ 41.  On October 12, 2022, Dominion placed another order for 9,092 Products in the amount of $1,620,004 (the "Second Order").  *Id.* ¶ 42.  Then, on December 14, 2022, Dominion placed a third order for 1,000 Products in the amount of $125,000 (the "Third Order").  *Id.* ¶ 43.  Dominion placed its fourth and final order for 4,000 Products in the amount of $670,000 (the "Fourth Order") on January 10, 2023 (collectively, the "Orders").  *Id.* ¶ 44.  In total, "Dominion purchased 24,592 Products for $3,837,504 from Plaintiff."  *Id.* ¶ 46.  This figure represents a steep discount; if Plaintiff had instead sold the Products at MSRP, "the total purchase price of the Products would amount to $8,493,808." *Id.* ¶¶ 47–48.

After Dominion purchased the Products, Plaintiff conducted "test buys of Products listed for sale on e-commerce marketplaces." *Id.* ¶ 52.  Specifically, "on January 24, 2023, [Plaintiff] placed an order for a Product . . . from a reseller . . . on the Amazon Marketplace." *Id.* ¶ 53.  Plaintiff then "traced this product through its product identification numbers to the Products Dominion purchased that were subject to the Agreement, including Section 3." *Id.* ¶ 54.  As a

result, Plaintiff "discovered that Dominion is either selling or offering for sale the Products on e-commerce marketplace . . . or ha[s] transferred the Products to others to then sell the Products on e-commerce marketplaces," in contravention of both Defendant's representations and the Agreement. *Id.* ¶ 55; *see id.* ¶¶ 1–4, 55. The foregoing events form the basis of Plaintiff's one-count complaint alleging fraudulent incident. *See* Compl. ¶¶ 1–4; 69–76.

**B. Related Proceedings**

Following its discovery of the improperly sold Product, Plaintiff initiated litigation against Defendant and Dominion in the United States District Court for the Central District of California. *Id.* ¶ 63. Shortly thereafter, Defendant and Dominion filed a Motion to Dismiss arguing that the dispute should be arbitrated in California pursuant to the terms of the Agreement. *Id.* ¶ 64. Plaintiff then dismissed the California litigation and filed a demand for arbitration before the American Arbitration Association. *Id.* ¶ 65. However, "Dominion and [Defendant] refused to consent to arbitration, despite previously asserting that the arbitration provision in the Agreement applied." *Id.* ¶ 66. Plaintiff thus filed the instant action against Defendant in this Court. *Id.* ¶ 68.

## II. PROCEDURAL HISTORY

Plaintiff filed its one-count complaint alleging fraudulent inducement on August 25, 2023. Compl. ¶¶ 1–4, 69–76. On October 26, 2023, Defendant filed the instant Motion to Dismiss and Memorandum in Support thereof. ECF Nos. 14, 15. Plaintiff filed its Memorandum in Opposition to Defendant's Motion to Dismiss on November 22, 2023. ECF No. 20. Defendant then filed its Reply on December 6, 2023. ECF No. 23. Accordingly, this matter is ripe for review.

## III. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic

recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

## IV. DISCUSSION[4]

Defendant raises several arguments in support of his Motion to Dismiss.  *See generally* Def.'s Mem. Supp. Mot. Dismiss ("Mem. Supp."), ECF No. 15.  First, Defendant argues that Plaintiff's Complaint must be dismissed as Plaintiff fails to particularly state his claim for fraud. *Id.* at 6–8.  Defendant relatedly argues that Plaintiff's Complaint must be dismissed because Plaintiff is not a party to the Agreement.  *Id.* at 3–5.  Next, Defendant contends that Virginia's economic loss rule bars Plaintiff's Complaint.  *Id.* at 5–6.  Lastly, Defendant argues that Section 8 of the Agreement precludes Plaintiff's suit, insofar as Section 8 disclaims reliance on any representations other than those set forth therein.  *Id.* at 8–10; Def.'s Reply Supp. Mot. Dismiss ("Reply") 6–7, ECF No. 23.  The Court considers these arguments below.

### A. Plaintiff Has Sufficiently Pleaded Its Fraud Claim

Defendant devotes roughly half of his briefing to two arguments:  (1) Plaintiff fails to state a claim for fraud with the requisite particularity, and (2) Defendant is not a party to the Agreement and therefore cannot be found liable for fraud.  *See* Mem. Supp. 3–5, 6–8.  Neither argument is availing.

---

[4] The Court notes that the parties do not brief choice of law; instead, both assume that Virginia law applies.  "A court need not address choice-of-law issues sua sponte." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 976 F. Supp. 2d 706, 713 n.2 (M.D.N.C. 2013) (citing *Flying J Inc. v. Comdata Network, Inc.*, 405 F.3d 821, 831 n. 4 (10th Cir. 2005); and citing *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 (D.C. Cir. 1991) (Mikva, J., dissenting in part)); *cf. Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 779–80 (4th Cir. 2023) (choice of law issues are waivable).  The Court thus assumes only for the sake of Defendant's arguments in this Motion that Virginia law applies.

Going forward, the Court encourages the parties to research and brief choice of law regarding whether Virginia's substantive law applies to Count I under Virginia's choice of law rules.  *See generally Klaxon Co. v. Stentor Elec. Manuf. Co.*, 313 U.S. 487, 496 (1941) (federal court sitting in diversity applies choice of law rules of the forum state).

1. Plaintiff Has Sufficiently Pleaded Count One

Fraud claims are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Such "circumstances" include the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained" as a result. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999); *see* Fed. R. Civ. P. 9(b). In other words, a plaintiff must sufficiently plead the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). That said, "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Failure to comply with the strictures of Rule 9(b) is "treated as a failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5.[5]

Defendant argues that, under the above standard, Plaintiff has failed to plead fraud with the requisite particularity. Mem. Supp. 7–8. In support of this argument, Defendant first contends that Plaintiff "fails to identify any actual misrepresentation made at a specific time and place by Walton." *Id.* at 7. Defendant next asserts that the exhibits to Plaintiff's Complaint contradict and undermine the allegations therein. *Id.* Defendant then argues that Plaintiff's Complaint sets forth nothing more than "bald accusations" and "mere speculation." *Id.* at 7–8. Finally, Defendant argues that Plaintiff fails to sufficiently allege that damages have resulted from Defendant's purported fraud. *Id.* at 8. In response, Plaintiff maintains that it has in fact "alleged the

---

[5] For this inquiry, the Court relies almost exclusively on Rule 9(b) because Defendant's argument is styled as a particularity challenge. Conversely, the question of whether Plaintiff's allegations actually give rise to a cause of action—i.e., whether Plaintiff has *plausibly* pleaded the *elements* of its fraud claim—would have entailed consideration of state substantive law. *See Walker v. Hill*, 2023 WL 129436, at *3–6 (4th Cir. Jan. 9, 2023) (relying on Virginia law for plausibility challenge and Rule 9(b) for particularity challenge).

quintessential elements of fraud to withstand [Defendant's] Motion."  Mem. Opp'n 7; *see* Mem. Opp'n 7–8 (outlining the relevant factual allegations).  Viewing the allegations in the light most favorable to Plaintiff and drawing all reasonable inferences in its favor, the Court finds that Plaintiff has pleaded its fraud claim with sufficient particularity.  Simply, Plaintiff has sufficiently alleged the "who, what, where, when, and how" of the alleged fraud.  *See Kellogg Brown & Root, Inc.*, 525 F.3d at 379.

First, Plaintiff has identified the individual that made the misrepresentation—Defendant— and what he obtained thereby—discounted prices for the Products.  *See* Compl. ¶¶ 1–2, 29–39, 56–58; Email Correspondence 3–12.  Plaintiff has likewise identified the "time, place, and contents" of the alleged fraud.  *Harrison*, 176 F.3d at 784; *see* Fed. R. Civ. P. 9(b).  Specifically, Plaintiff has alleged that Defendant's fraudulent scheme began in August 2022, Compl. ¶ 29, took place via email and telephone communications, Compl. ¶ 29–31, and involved Defendant "fraudulently inducing [Plaintiff] to enter the Agreement . . . whereby [Plaintiff] sold [the Products] to [Defendant] at a significantly reduced price under the guise that Dominion and Defendant would use the Products as corporate gifts." [6]  Compl. ¶ 1; *see id.* ¶¶ 1–4, 7, 29–59, 70–76.  Plaintiff even specifically alleges that Defendant "made false representations of positive, material fact when he . . . represented to [Plaintiff] that the Products purchased were . . . to be used as corporate gifts, when in reality, [Defendant] and Dominion had no intention of gifting the

---

[6] Defendant disputes this characterization, arguing that "corporate gifts" are never actually mentioned in the correspondence Plaintiff references.  Mem. Supp. 7.  However, on at least one occasion, Defendant noted his and Dominion's desire to "give away a branded product" to employees.  Email Correspondence 10.  Defendant also mentioned a "huge company-wide campaign," and referenced another occasion wherein Dominion "purchas[ed] . . . computers . . . for [Dominion's] employees and drivers."  *Id.*  Given this context, and drawing all inferences in Plaintiff's favor, the Complaint's characterization of the Products purportedly being purchased as "corporate gifts" is indeed consistent with the relevant exhibits.

Products and instead intended to resell the Products."  *Id.* ¶ 70; *see* Fed. R. Civ. P. 9(b) ("[I]ntent, knowledge, and other conditions of a person's mind may be alleged generally.").

At bottom, it would be unreasonable—and would indeed expand the requirements of Rule 9(b)—to expect anything more from Plaintiff's allegations at this early stage.  *See* Fed. R. Civ. P. 9(b); *Entrepreneur Dream Team v. Certain Interested Underwriters of Lloyd's Ins. Co.*, 2023 WL 5670041, at *6 (E.D. Va. Aug. 31, 2023) (noting that 9(b)'s requirements "are not unyielding, and generally serve to ensure that the defendants have sufficient information to formulate a defense"). As such, the Court finds that Plaintiff has pleaded its fraud count with the requisite particularity.[7]

### 2. Plaintiff Need Not Be a Party to the Contract to Allege Fraudulent Inducement

Defendant alternatively argues that Plaintiff "cannot proceed on its [fraudulent inducement] claim against [Defendant]" because Defendant "is not a party to the contract at issue." Mem. Supp. 3; Reply 1–2.  This argument also misses the mark.

While fraudulent inducement claims often involve the parties to a contract, *see, e.g., Abi-Najm v. Concord Condominium, LLC*, 280 Va. 350, 354–56 (2010), various decisions by the Supreme Court of Virginia (and other courts interpreting Virginia law) indicate that claims for fraudulent inducement may likewise proceed against non-parties.  *See City of Richmond v. Madison Mgmt. Grp.*, 918 F.2d 438, 446–50 (4th Cir. 1990) (finding that the plaintiff had presented

---

[7] Defendant's damages argument, on the other hand, appears to be more of a *plausibility* challenge than a *particularity* one.  See Mem. Supp. 8 (disputing whether Plaintiff has alleged "resulting damage," one of the elements of fraud under Virginia law); Reply Supp. Mot. Dismiss 4–6, ECF No. 23.  However, contrary to Defendant's assertion, Plaintiff has in fact alleged that "Dominion's [actions] caused 'resulting damage' to Plaintiff."  Mem. Supp. 8.  Specifically, Plaintiff alleges that it has been damaged in an amount to represent the difference between (a) the market value of the Products and (b) the discounted cost at which Plaintiff was fraudulently induced to sell the products to Defendant. Compl. ¶ 56–59.  Whether Plaintiff can *prove* these damages is a separate question reserved for later stages of this litigation.  *See SunTrust Mortgage, Inc. v. K. Hovnanian Am. Mortgage, LLC*, 2012 WL 13029758, at *1 (E.D. Va. July 9, 2012) ("Here, the defendant contends that because the plaintiff . . . has failed to produce evidence that it sustained the alleged financial losses, the entire suit should be dismissed . . . .  This argument . . . misapprehends the purpose of a Rule 12(b)(6) motion. . . .  Whether plaintiff has proven these damages . . . is a question . . . properly reserved until after the parties have engaged in adequate discovery and filed motions for summary judgment.").

sufficient evidence of actual fraud by showing that it relied upon the representation of a third-party when deciding whether to award a contract to a construction contractor); *Zuberi v. Hirezi*, 2017 WL 436278, at *7 n.5 (E.D. Va. Jan. 30, 2017) (noting that "[a]t least one Supreme Court of Virginia case suggests" that a claim for fraudulent inducement against a non-party to the fraudulently induced contract "may exist when the non-party 'knew or had reason to know' that the misrepresentations would be relied upon") (quoting *Mortarino v. Consultant Eng'g Servs., Inc.*, 251 Va. 289, 295 (1996)); *cf. Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 82 n.11 (2019) ("[W]e have never held . . . that a claim for fraudulent inducement, which involves a new contract induced with a third-party, is barred by the source-of-duty rule.").

Neither party actually references the above line of cases. For its part, Defendant appears to conflate fraud claims and breach of contract claims. *See* Mem. Supp. 3–5 (relying on breach of contract caselaw to argue that Defendant cannot be individually liable for fraudulent inducement). Plaintiff's counterargument—that Defendant may be liable as "an officer and/or employee" of Dominion—is slightly more germane. *See* Mem. Opp'n 9–11. However, resolution of this issue is simpler than the briefing suggests: a fraudulent inducement claim may lie where the plaintiff alleges that it relied upon the representations of a non-party or third-party to the contract, so long as the plaintiff sufficiently pleads the remaining required elements. *See City of Richmond*, 918 F.2d at 446–50; *Mortarino*, 251 Va. at 295 (suggesting that a fraudulent inducement claim may proceed against a non-party to the contract where a party pleads, "with the requisite degree of particularity, facts which support all the elements of a cause of action for . . . fraud"); *cf. Fenner BL, LLC v. Fenner Garden Partners, LLC*, 2018 WL 9393019, at *4 (Va. Cir. Apr. 30, 2018) (noting that, at the motion to dismiss stage, the court cannot "conclude . . . that no set of facts could

be proven against [a non-party to the contract] to establish her liability to [the p]laintiff"). Consequently, Defendant's non-party status presents no impediment to Plaintiff's fraud claim.

**B. The Economic Loss Rule Does Not Bar Plaintiff's Free-Standing Fraud Claim**

Defendant next argues that the economic loss rule bars Plaintiff's fraud claim. *See* Mem. Supp. 5–6. According to Defendant, "the allegations in Plaintiff's Complaint arise wholly from the [Agreement]." Mem. Supp. 5. Defendant thus argues that "the economic loss rule precludes Plaintiff from seeking damages on a tort claim [that is] fundamentally based in contract." *Id.* at 6. Defendant's position misapprehends both Plaintiff's allegations and the economic loss rule.

The economic loss rule requires courts to first "determine 'whether a cause of action sounds in contract or tort,' . . . by ascertaining 'the source of the duty violated.'" *Abi-Najm v. Concord Condominium, LLC*, 280 Va. 350, 361 (2010) (quoting *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558 (1998)). The "source of the duty violated" then dictates the available scope of damages—i.e., tort damages and/or contract damages. *See id.*; *Filak v. George*, 267 Va. 612, 618 (2004). The rule's purpose is to "prevent[] a plaintiff, whose only legitimate ground of complaint is that a contract has been breached, from collecting in a tort action both economic loss damages and damages generally cognizable in tort." *City of Richmond,* 918 F.2d at 446 (internal citations and quotations marks omitted). The rule is therefore "not implicated where close inspection of the plaintiff's case reveals a genuine foundation for a tort claim." *Id.*

An action sounds in tort where the "duty tortiously or negligently breached [is] a common law duty, not one existing between the parties *solely* by virtue of the contract." *MCR Fed., LLC v. JBA&A, Inc.*, 294 Va. 446, 458 (2017) (emphasis added); *see Tingler*, 298 Va. at 82; *Filak*, 267 Va. at 618 ("[T]he law of torts provides redress only for the violation of certain common law and statutory duties . . . which are imposed to protect the broad interests of society). Conversely, an

12

action sounds in contract where the losses suffered result from "a breach of a duty assumed *only* by agreement, rather than a duty imposed by law." *Filak*, 267 Va. at 618 (emphasis added). Importantly, "[a] single act or occurrence can . . . support causes of action both for breach of contract and for breach of a duty arising in tort, thus permitting a plaintiff to recover both for the loss suffered as a result of the breach and traditional tort damages." *Dunn Constr. Co. v. Cloney*, 278 Va. 260, 266–67 (2009); *see Abi-Najm*, 280 Va. 350, 361 (2010).

While "the borderland of tort and contract, and the nature and limitations of . . . tort action[s] arising out of a breach of contract, are poorly defined," WILLIAM LLOYD PROSSER, SELECTED TOPICS ON THE LAW OF TORTS 452 (1982), the Supreme Court of Virginia has fortunately provided some unequivocal guidance in this realm. Relevant for present purposes, the Supreme Court of Virginia has clearly held that "the economic loss rule does not bar [tort] claims of fraud in the inducement." *4D-Enterprises, LLC v. Aalto Hyperbaric Oxygen, Inc.*, 2020 WL 13200492, at *3 (E.D. Va. May 22, 2020) (citing *Abi-Najm*, 280 Va. at 362); *Abi-Najm*, 280 Va. at 363 (noting that where the alleged fraud occurs "*before* a contract . . . c[omes] into existence, . . . it cannot logically follow that the duty . . . breached was one that finds its source in the [c]ontract[]"); *Tingler*, 298 Va. at 82 n.11 ("Claims for fraudulent inducement, however, logically preexist . . . the contract allegedly induced and thus stand as a viable tort claim."); *cf. Richmond Metro. Auth.*, 256 Va. at 558–60 (holding that economic loss rule barred the plaintiff's fraud claim because "[t]he present case is not one of fraud in the inducement").

The Fourth Circuit and lower courts therein have held similarly when interpreting Virginia law. *See, e.g., City of Richmond*, 918 F.2d at 445–47 ("[The plaintiff] has alleged that [the defendants] violated a duty imposed by tort, *i.e.*, the duty not to commit fraud. Accordingly, [the defendants] are not entitled to the protection of the economic loss rule, which protects only those

13

defendants who have breached *only* contractual duties.") (emphasis added); *S. Coal Sales Corp. v. Xcoal Energy & Res.*, 2013 WL 417789, at *4 (W.D. Va. Feb. 1, 2013) (collecting cases); *Marcano v. Fox Motors, Inc.*, 2011 WL 1326999, at *3 (E.D. Va. Apr. 7, 2011) ("One well-settled instance, both as a matter of law and as a matter of logic, where the duty allegedly violated arises outside of contract and, thus, may support a cause of action for fraud, is where the allegedly fraudulent representation occurred before the contract came into existence."); *McKesson Med.-Surgical, Inc. v. Kearney*, 271 F. Supp. 2d 827, 829 (E.D. Va. 2009) (noting that the Fourth Circuit "has continuously held that when a fraud precedes the formation of a contract, the duty breached is not contractual in nature, and . . . the economic loss rule does not apply).

Defendant does not dispute that fraudulent inducement claims are excepted from the economic loss rule. *See* Reply 2–4. Instead, Defendant argues that the fraudulent inducement exception is inapplicable because "Plaintiff's one-count Complaint alleging fraud is merely an attempt to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim." Mem. Supp. 5. To support this contention, Defendant points to the history of this dispute (i.e., Plaintiff's prior breach of contract action), and also contends that Plaintiff's damages allegations "are entirely reliant on the liquidated damages clause in the Contract." Mem. Supp. 5–6. Defendant also argues that his alleged representations were ultimately incorporated into the contract, rendering "[a]ny alleged failure . . . to adhere to [such representations] . . . at most, a potential breach of contract—not fraud." Reply 4; *see* Reply 3–4.

Plaintiff responds that its "claim for fraud in the inducement is not barred by the doctrine of economic loss" because "Virginia and the Fourth Circuit both recognize the exception to the economic loss doctrine for fraud in the inducement." Mem. Opp'n 8. Plaintiff emphasizes that Defendant's alleged misrepresentations "occurred . . . before the Agreement was formed," *id.* at 9,

14

and that such misrepresentations were in fact "a basis for [Plaintiff] entering into the Agreement." *Id.*  Plaintiff also argues that Defendant's misrepresentations "served as a basis for [Plaintiff] to offer" the Products at discounted prices to Defendant and Dominion.  *Id.*  Plaintiff argues that these factual circumstances are thus analogous to those in other cases wherein courts have held that the economic loss rule did not bar a plaintiff's fraudulent inducement claim.  *See id.* at 9 (citing *Marcano*, 2011 WL 1326999, at *3–4.

Ultimately, the Court finds that Plaintiff's fraud claim "falls comfortably within the fraud in the inducement exception to the economic loss rule." *S. Coal Sales Corp.*, 2013 WL 417789, at *4 (internal quotations omitted).   Here, Plaintiff alleges that (1) Defendant made misrepresentations concerning present or pre-existing facts, *see* Compl. ¶¶ 1, 29–40, 70; (2) Defendant's representations were "intended to, and did mislead [Plaintiff] into believing that the Products would be used as corporate gifts," *id.* ¶ 72; *see id.* ¶¶ 29–39; (3) Defendant "made these false representations" prior to the Agreement, and indeed "for the specific purpose of procuring [Plaintiff's] assent to the Agreement," *id.* ¶ 73; *see id.* ¶¶ 1, 29–40; (4) as a result of Defendant's "false representations of material fact, [Plaintiff] was induced to sell the Products to Dominion," *id.* ¶ 75; *see id.* ¶¶ 29–40; and (5) Plaintiff suffered damages because of Defendant's false representations of material fact, *id.* ¶ 76; *see id.* ¶¶ 40–47.

The above allegations reveal that "the fraud . . . was perpetrated by [Defendant] *before* [the Agreement] came into existence," *Abi-Najm*, 280 Va. at 363 (emphasis in original), and indeed *led to* the Agreement.  It therefore "cannot logically follow that the duty [Defendant] allegedly breached was one that finds its source in the [Agreement]." *Id.*  Accordingly, the economic loss rule is inapplicable.  *See id.*; *McKesson*, 271 F. Supp. 2d at 829 ("[W]hen a fraud precedes the formation of a contract, the duty breached is not contractual in nature, and thus, the economic loss

rule does not apply.") (citing *City of Richmond*, 918 F.2d at 446–47); *S. Coal Sales Corp.*, 2013 WL 417789, at *5 ("Virginia courts and lower courts within Fourth Circuit have explicitly noted that misrepresentations of present fact made prior to a contract's formation, but made to induce a plaintiff to enter into the contract, can support a fraud claim and are not barred by the economic loss rule."). Instead, the duty allegedly breached here, "i.e., the duty not to commit fraud," *City of Richmond*, 918 F.2d at 447, is a duty independently "imposed by tort law." *Id.*

The Court also finds it immaterial whether the fraudulent representations were ultimately "incorporated in[to] the [Agreement]." Reply 4. First, Virginia law "recognizes the separate tort of fraud even where the parties have agreed to a contract." *City of Richmond*, 918 F.2d at 446–47. Thus, the inclusion of such representations in the Agreement would not, by itself, bar Plaintiff's fraud claim. *See id.* Additionally, the economic loss rule precludes tort actions based on duties that exist "*solely* by virtue of [a] contract." *MCR Fed., LLC*, 294 Va. at 458 (emphasis added); *see Richmond Metro. Auth.*, 256 Va. at 558 ("[A] party can, in certain circumstances, show both a breach of contract and a tortious breach of duty. . . . However, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.") (cleaned up). Where—as here—the duty allegedly breached exists *outside* of the contract, the economic loss rule is no bar *even if* a similar duty is memorialized *in* the contract.[8]

In sum, Plaintiff alleges the breach of a duty that exists independently of the Agreement— the duty to not commit fraud. *See City of Richmond*, 918 F.2d at 447. Therefore, the economic loss rule does not bar Plaintiff's claim.

---

[8] Defendant's argument that Plaintiff's damages allegations "are entirely reliant on the liquidated damages clause in the Contract" fails for similar reasons. Viewed in the light most favorable to Plaintiff, Plaintiff alleges not that it is entitled to $4,656,304 because that is what the Agreement requires; rather, Plaintiff alleges it is entitled to that sum because it represents the "difference between the price paid by Dominion for the Products and the MSRP for the Products." Compl. ¶ 58. That is, Plaintiff alleges it would have earned an additional $4,656,304 had it not been fraudulently induced by Defendant and "instead sold the Products at retail." *Id.* As noted previously, whether Plaintiff can ultimately prove these damages is a question better reserved for later stages of this litigation. *See supra* note 6.

**C. The Disclaimer in Section 8 of the Agreement Is Irrelevant**

Defendant lastly urges dismissal of Plaintiff's Complaint on the ground that Section 8 of the Agreement contains certain express warranties and disclaimers that prevent Plaintiff's suit from moving forward. This argument fares no better than the others raised by Defendant.

In general, "a contractual disclaimer of reliance is not a prophylactic agent against a claim of fraud." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 630 (4th Cir. 1999). To hold otherwise "would give effect to a waiver that exists solely because a fraud occurred." *FS Photo, Inc. v. PictureVision, Inc.*, 61 F. Supp. 2d 473, 481 (E.D. Va. 1999); *Nahigian v. Juno Loudon, LLC*, 684 F. Supp. 2d 731, 740 (E.D. Va. 2010) ("[I]f an individual is duped into entering an agreement that same agreement cannot take away the individual's right to sue for fraud."). Consequently, "in a claim for fraud, a party to a contract may point to representations outside of the contract to show that those representations induced the party to enter the contract, even if the contract itself contains a clause limiting or disclaiming liability for such representations." *Id.* (citing *Hitachi*, 166 F.3d at 630–31); *Hitachi*, 166 F.3d at 630 ("While ... contracting parties may waive their contractual rights and disclaim or limit certain liabilities, a false representation of a material fact, constituting an inducement to the contract, on which the purchaser had a right to rely, is always ground for rescission of the contract by a court of equity or an action for damages in a court of law.") (internal quotations omitted).

Moreover, "[a party] can recover for fraudulent inducement not only where the contract contains a *general* disclaimer of warranties and liability, but also where the contract contains *specific* disclaimers that do *not* cover the allegedly fraudulent contract-inducing representations." *Hitachi*, 166 F.3d at 630 (emphasis added); *LTD Mgmt. Co. v. Holiday Hosp. Franchising, Inc.*, 2008 WL 7281926, at *10 (E.D. Va. Mar. 11, 2008) ("[U]nder Virginia law a merger clause does

17

not prevent a plaintiff from recovering for fraud . . . unless a specific disclaimer covers the 'allegedly fraudulent, contract-inducing representations.'") (citing *Hitachi*, 166 F.3d at 628, 630–31); *Atl. Credit & Fin. Special Fin. Unit, LLC v. MBNA Am. Bank, N.A.*, 2001 WL 856704, at *4 (W.D. Va. 2001) ("[B]road disclaimers do not shield a [party] from liability for fraudulent misrepresentations designed to induce [another] to enter a contract. . . .  [O]nly where the disclaimer relates to the content of the misrepresentation does reliance upon the misrepresentation become unjustifiable."); *cf. FS Photo, Inc.*, 61 F. Supp. at 481 ("A merger clause born of fraud should not be allowed to immunize the fraudulent conduct; had there been no fraud, there would be no merger clause.").

The parties' arguments on this issue are fairly brief.  For his part, Defendant argues that in Section 8 of the Agreement, "Plaintiff admitted that it did not enter into the [Agreement] in reliance upon any representation other than as set forth in Section 8."  Mem. Supp. 8–9.  And  "[b]ecause the alleged representation that Dominion purchased the Products only for 'corporate gifts' is not part of Section 8," Plaintiff cannot assert "that it relied and was induced to enter into the Agreement by [such] representation."  *Id.* at 9.  Defendant also argues that Section 8 of the Agreement constitutes an "express" disclaimer that is sufficiently specific as to bar Plaintiff's fraud claim.  Reply 6.  Plaintiff retorts that "limitations and disclaimers . . . such as those in Section 8 of the Agreement . . . are not the end-all be-all where a party to the agreement was fraudulently induced into entering the agreement."  Mem. Opp'n 11.  Because Plaintiff alleges such fraudulent inducement here, Plaintiff argues that the Court may "look beyond" any contractual disclaimers and focus on Defendant's "unlawful business tactics."  *Id.* at 12.  Plaintiff lastly emphasizes that "Defendant cannot now use the contract to escape liability for fraudulently inducing Plaintiff to rely on terms outside the Agreement."  *Id.*

The disclaimer provision presently at issue—Section 8—is excerpted below in its entirety:

## 8. WARRANTIES; LIMITED WARRANTY; WARRANTY DISCLAIMER.

Each party hereby represents and warrants: (i) it is duly organized, validly existing and in good standing as a corporation or other entity as represented herein under the laws and regulations of its jurisdiction of incorporation, organization or chartering; and (ii) that this Agreement, when executed and delivered, will constitute a valid and binding obligation of such party and will be enforceable against such party in accordance with its terms. Buyer represents and covenants: (x) it shall not alter or modify in any manner whatsoever the Products sold or shipped to Buyer hereunder, except as permitted herein; and (y) Buyer shall not make any alterations to any of the packaging or labeling of the Products, or make any disease claims, health claims, or structure/function claims about the Products, that would violate or be prohibited by applicable law. Except as otherwise expressly provided in a separate, signed, written agreement between Buyer and Therabody, or as expressly provided herein, Therabody warrants solely to the Buyer that the Products shall materially conform to Therabody's published specifications for such Products at the time of manufacture (the "Limited Product Warranty"). The Limited Product Warranty provided herein is valid from the original date of purchase of such Products to Buyer for the periods specified for each Therabody Product on the Therabody website. The Limited Product Warranty is also valid only when the Products are used by properly trained individuals and not otherwise subject to abuse, misuse, neglect, negligence, improper testing, improper handling, improper operation, or use contrary to the instructions issued by Therabody with the Products. All technical advice, documentation and information provided by Therabody, whether by phone, e-mail, website or any other channel is provided "AS IS" and without any warranty of any kind. It is Buyer's responsibility to determine if a Therabody Product is suitable for a specific purpose and to apply the necessary safety precautions. Buyer's exclusive remedies under this Limited Product Warranty are, at Therabody's option: (i) repair or replacement of the Product that failed to conform to tire warranty above, or (ii) at Therabody's option, a credit for the amount paid to Therabody for any non-conforming Product. Buyer and customer, as applicable, will be responsible for return of the Products to Therabody for repair or replacement pursuant to a return merchandise authorization ("RMA") issued by Therabody and in accordance with Therabody's return procedures. The foregoing states Buyer's sole and exclusive remedy, and Therabody's entire liability, for breach of warranty of purchased Products under this Agreement. Except as set forth above in Section 8, the Products and any Therabody training information, educational information, marketing materials and/or digital assets (the "Therabody Materials ") are provided "as is" without warranties of any kind. Without limiting the foregoing, Therabody disclaims all warranties and representations of any kind, whether express, implied, or statutory, including without limitation the implied warranties of merchantability, title, non-infringement, fitness for a particular purpose, quiet enjoyment, and accuracy. Therabody does not warrant that the operation of the Products will be uninterrupted or error-free. Both parties acknowledge that they have not entered into this

Agreement in reliance upon any warranty or representation other than those set forth above in this Section 8.

Compl. Ex. 1 ("Therabody Terms & Conditions of Sale Agreement") 3, ECF No. 1-2.

A review of Section 8 reveals two alternative grounds for rejecting Defendant's arguments. First, to the extent Defendant hinges his disclaimer argument on the "both parties acknowledge" language at the end of Section 8, such language is plainly the sort of general disclaimer that will not prevent courts from considering allegedly fraudulent representations extrinsic to the contract. *See Hitachi*, 166 F.3d at 630–31; *FS Photo, Inc.*, 61 F. Supp. 2d at 481; *Atl. Credit & Fin. Special Fin. Unit, LLC*, 2001 WL 856704, at *4. And second, none of the remaining language of Section 8 "relates to the content of the [alleged] misrepresentation[s]," i.e., that Defendant and Dominion would be using the Products as corporate gifts. *Atl. Credit & Fin. Special Fin. Unit, LLC*, 2001 WL 856704, at *4; *see Hitachi*, 166 F.3d at 630. Indeed, conspicuously absent from Section 8 is any mention of—or disclaimer(s) regarding—the *reason* Defendant and Dominion sought to purchase the Products. *See* Therabody Terms & Conditions of Sale Agreement 3. In the absence of such a "specific disclaimer . . . cover[ing] the allegedly fraudulent contract-inducing representations,'" *Hitachi*, 166 F.3d at 631, the Court is not inclined to find that Plaintiff has waived its right to bring this fraud suit. To find otherwise would potentially give effect "to a waiver that exists solely because a fraud occurred." *FS Photo, Inc.*, 61 F. Supp. 2d at 481.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 14) will be denied.

An appropriate Order shall issue.

Richmond, Virginia
Date: <u>March 25, 2024</u>

/s/ _RCY_
Roderick C. Young
United States District Judge