IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THERABODY, INC.,                    )
      Plaintiff,                    )
                        )
          v.                    )          Civil Action No. 3:23CV545 (RCY)
                        )
DAVID C. WALTON,                    )
      Defendant.                    )
_____)

## MEMORANDUM OPINION

This is a fraud action brought by Plaintiff Therabody, Inc. ("Therabody") wherein Therabody alleges that Defendant David Walton ("Walton") fraudulently induced Therabody to sell him discounted massage devices, under the guise that Walton would distribute the devices to his employees as gifts. Therabody alleges that, instead of gifting the devices, Walton resold them, in contravention of their agreement. This case is before the Court on review of the Special Master's Report & Recommendation ("R&R"), ECF No. 58, regarding a variety of discovery disputes. Both parties have filed objections to the R&R. The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will adopt the R&R in part and reverse in part.

## I. FACTUAL ALLEGATIONS

### A.    Summary of Plaintiff's Complaint

Plaintiff Therabody initiated this action by filing its Complaint on August 25, 2023. Compl., ECF No. 1. Therein, Therabody advances a single count of fraud against Walton and alleges the following factual narrative.

Therabody sells "high-end percussive massage devices, wellness products, and accessories" (collectively, "Products"). *Id.* ¶ 1. Therabody generally sells its offerings directly through e-commerce marketplaces and brick-and-mortar stores, as well as by partnering with certain wholesalers and authorized resellers. *Id.* ¶¶ 11–12. Therabody does not allow, however, unauthorized resellers to sell its Products. *Id.* ¶ 21. To police unauthorized resale, Therabody "actively monitors the sale of its Products" and conducts "test buys" of resold Products. *Id.* ¶¶ 49–50.

Defendant Walton is the principal and owner of Dominion Sourcing, LLC ("Dominion"). Compl. ¶ 1. On August 23, 2022, Defendant Walton contacted Therabody to conduct a bulk purchase of Therabody's Products and was referred to Therabody's Vice President of Corporate Markets, Andrew Spellman. *Id.* ¶¶ 29–30, 32–33. Therabody alleges that Walton "enticed Therabody to complete the sale" by representing to Spellman that Walton hoped to purchase Therabody's Products to conduct a "huge company wide campaign," in which Walton would gift the Products to his employees and contractors. *Id.* ¶¶ 35–38. Walton also represented that Dominion had previously conducted a similar campaign in which it purchased 30,000 computers from Staples. *Id.* ¶ 36. Therabody alleges that, in reality, Walton "had no intention of gifting the Products." *Id.* ¶ 70.

According to Therabody, Walton's false representations to Spellman "induce[d]" Therabody to enter into the Therabody Terms & Conditions of Sale (Corporate Markets) Agreement (the "Agreement"). *Id.* ¶¶ 1, 40, 75. The Agreement memorialized Walton's assent to Therabody's terms of the bulk sale, including a blanket prohibition on reselling Therabody's Products. *Id.* ¶ 19.

Pursuant to the terms of the Agreement, Dominion placed a number of orders for Therabody's Products. *Id.* ¶¶ 40–46. In total, "Dominion purchased 24,592 Products for

$3,837,504." *Id.* ¶ 46.  This total, however, represents a steep discount; if Therabody had sold the same number of Products at MRSP, "the total purchase price . . . would amount to $8,493,808." *Id.* ¶¶ 47–48.

After Dominion completed its purchases, Therabody conducted "test buys of Products listed for sale on e-commerce marketplaces." *Id.* ¶ 52.  Using product identification numbers, Therabody was able to trace at least one product available for sale on Amazon Marketplace to the Products purchased by Dominion, which, of course, were subject to the prohibition on resale. *Id.* ¶ 54.  As a result, Therabody "discovered that Dominion is either selling or offering for sale Products on e-commerce marketplaces . . . or ha[s] transferred the Products to others to then sell the Products on e-commerce marketplaces," in contravention of Walton's representations as well as the Agreement. *Id.* ¶ 55.

**B.    Summary of Walton's Counterclaim**

On January 29, 2024, Walton filed his Answer, Affirmative Defenses, and Counterclaim ("Answer" & "Countercl."),[1] ECF No. 35.  Therein, Walton advances one count of fraud and one count of unjust enrichment against Therabody.  *See generally* Countercl.  In support, Walton alleges that Spellman—Therabody's Vice President of Corporate Markets, who worked directly with Walton—represented to Walton that Walton would be sold brand new Products.  *Id.* ¶ 9. Walton alleges that, upon receiving the purchased Products, he received notice that the Products had were not "new" as promised.  *Id.* ¶ 11.  Walton alleges that he immediately alerted Spellman of the misrepresentation, and Spellman admitted that the Products were refurbished.  *Id.* ¶¶ 12, 24.

---

[1] Docket filing ECF No. 35 is separated into two, discrete, legally operative sections: Walton's Answer, from pages 1–10, and Walton's Counterclaim, from pages 11–16.  Both sections are comprised of enumerated paragraphs. For ease of reference, the Court will cite to the Answer and Counterclaim as distinct documents with an accompanying pin cite to the relevant paragraph.

Walton alleges that, by misrepresenting the nature of the Products and inducing Walton to pay for brand new Products, Therabody is liable for fraud and unjust enrichment.  *See generally id.*

## II. RELEVANT PROCEDURAL HISTORY

As noted *supra*, Therabody filed its Complaint against Walton on August 25, 2023. Compl., ECF No. 1.  On January 17, 2024, the Court entered a Scheduling Order, setting the matter for trial to commence on June 22, 2024.  Order, ECF No. 32.  On January 29, 2024, Walton filed his Answer and Counterclaim against Therabody.  Answer & Countercl., ECF No. 35.  On February 20, 2024, Therabody filed its Answer to Walton's Counterclaim.  Answer, ECF No. 36.

On March 29, 2024, Therabody first notified the Court of discovery disputes ("Initial Disputes") between the parties by way of its Motion to Extend Case Deadlines, ECF No. 43.  Even after a hearing and numerous status reports from the parties, the parties were unable to resolve their discovery disputes.  *See, e.g.*, Order, ECF No. 49.  Thus, the Court referred the parties' disputes to Special Master Charles E. James, Jr., for findings and recommendations.  Order, ECF No. 55.

In October of 2024, the Court was advised that new disputes ("Additional Disputes") had arisen between the parties.  Thus, on November 1, 2024, the Court referred the newly arisen disputes to the Special Master to determine the extent to which the newly arisen issues fell within his subject matter authority and make findings and recommendations on any issues resolvable under that authority.  Order, ECF No. 56.

On February 10, 2025, the Special Master filed his R&R.  R&R, ECF No. 58.  On February 27, 2025, Walton filed his Objections to the R&R of the Special Master ("Walton Obj."), ECF No. 60.  Therabody filed its Objections to the R&R of the Special Master ("Therabody Obj."), ECF No. 61, the same day.  On March 13, 2025, Walton filed his Reply to Plaintiff's Objections to the R&R of the Special Master ("Walton Reply"), ECF No. 62.

4

### III. STANDARD OF REVIEW

#### A.    Reviewing the R&R

When reviewing a party's timely objection to a special master's R&R, the Court must decide *de novo* any objections to the Special Master's factual findings.  Fed. R. Civ. P. 53(f). Similarly, the Court must decide *de novo* any objections to conclusions of law recommended by the Special Master.  *Id.*  "In acting on a master's order . . . the Court may adopt or affirm, modify, wholly or partly reverse, or resubmit to the master with instructions."  *Id.*  "Any unobjected-to portions of the Special Master's [R&R] are reviewed for clear error."  *Daedalus Blue, LLC v. MicroStrategy Inc.*, 2023 WL 5941736, at *7 (E.D. Va. Sept. 12, 2023) (collecting cases).

#### B.    Discoverable Material

A party is entitled "to discover any material that is relevant to any party's claim or defense, is nonprivileged, and is proportional to the needs of the case."  *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citing Fed. R. Civ. P. 26(b)(1)).  "The Federal Rules contemplate the broadest discovery possible in the search of the truth."  *Doe v. Old Dominion Univ.*, 289 F. Supp. 3d 744, 749 (E.D. Va. 2018). "Accordingly, discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action."  *Wrangen v. Penn. Lumbermans Mut. Ins. Co.*, 593 F. Supp. 2d 1273, 1277 (S.D. Fla. 2008), *accord Oppenheimer Fund v. Sanders*, 437 U.S. 340, 350–51 (1978) ("[The rule] has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.").  Importantly, information that is otherwise relevant "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  However, even when relevant, a Court may limit

discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

## IV. ANALYSIS

In their responses to the R&R, both parties object to at least some of the Special Master's legal conclusions and attending recommendations. *See generally* Walton Obj., ECF No. 60; Therabody Obj., ECF No. 61. As set out below, the Court reviews these disputed conclusions *de novo*. Neither party, however, objects to the Special Master's factual findings, i.e., the R&R's description of the substance of the disputes. *See generally* Walton Obj.; Therabody Obj. Thus, the Court reviews those findings for clear error only.

### A.    Summary of the Disputes

The Court has reviewed the Special Master's description of the disputes for clear error. Finding none, the Court adopts the R&R's factual findings, as follows.

#### 1.    The Initial Disputes

The Initial Disputes between the parties each pertain to the parties' respective positions that the other seeks undiscoverable information by way of interrogatories ("ROGs"), requests for production of documents ("RFPs"), and requests for admission ("RFAs"). R&R 4. Walton has refused to respond to Therabody ROGs 9, 13–15, 17–20; RFPs 5–15 and 17–20; and RFAs 7–15, 17–23, 25–45, 48, 59–65, and 71–74. *Id.* Therabody has refused to respond to Walton ROGs 3–4, 7, 10–13, and 15–17; Walton RFPs 11, 14, 16–17, and 19; and Walton RFAs 2–3, 6, 10–12, 14–23, and 30. *Id.*

#### 2.    The Additional Disputes

The Additional Disputes are each advanced by Walton. *Id.* at 5. First, Walton argues that Therabody untimely supplemented discovery requests after the discovery period had closed. *Id.* Second, Walton contends that an April 22, 2024 third-party subpoena endorsed by Therabody's

*pro hac vice* counsel is improper. *Id.* Third, and finally, Walton contends that Therabody was obligated to disclose the results of the same third-party subpoena to Walton. *Id.*

**B.    Analysis of the Initial Disputes**

1.    <u>Measure of Fraud Damages</u>[2]

a.    *Summary of Dispute*

A number of the parties' disputes relate to the measure of fraud damages. These are:

- Walton ROG 11: Identify the amount and cost of all unsold items during the relevant time period.[3]

- Walton ROG 16: Identify the cost per unit of the Products sold to Dominion.

- Walton ROG 17: Identify the amount of profit Therabody earned upon the sale of Products to Dominion.

- Walton RFP 11: Produce all Documents concerning, relating to, or otherwise pertaining to the manufacture, former sales, returns, and refurbishing of the Products sold to Dominion.

- Walton RFP 14: Produce all Documents concerning, relating to, or otherwise pertaining to the return, exchange, refund, defect, warranty, or malfunction of the Products, including the Products subject to the Agreement and the Orders.

- Walton RFP 19: Produce all documents reflecting Therabody's pricing, cost, and profit margin for the Products sold to Dominion.

- Walton RFA 2: Admit that You made a profit on the Products that were purchased subject to the Agreement and Orders through ecommerce channels.

- Walton RFA 11: Admit that You financially benefitted from the sale of the Products that were purchased subject to the Agreement and Orders.

---

[2] For ease of reference, the Court mirrors the R&R's topical groupings of the disputes.

[3] The Special Master provided the language of the disputed discovery requests in R&R Exhibit 1, ECF No. 58-1. Neither party has objected to the accuracy of Exhibit 1, *see generally* Therabody Obj.; Walton Obj., and the Court has found no clear error therein. Thus, the Court reproduces the language of the relevant disputes as represented by R&R Exhibit 1 throughout its opinion.

- Walton RFA 12: Admit that You sold Products to Dominion for Your financial benefit.

  b. *Parties' Positions and Special Master's Conclusion*

While proceeding before the Special Master, the parties argued incompatible theories of calculating Therabody's purported damages. R&R 6–7. Walton argued that Therabody's damages would be limited by any profits made on the Products sold to him, while Therabody argued that the proper calculation for its claim against Walton was expectation damages, rendering its profit irrelevant. *Id.*

The Special Master agreed with Therabody and concluded that the proper calculation of damages for Therabody's fraud claim is the difference between the discounted price provided to Walton and the Products' MSRP. R&R 8 (citing *Lasercomb Am., Inc. v. Holliday*, 961 F.2d 211 (Table) (4th Cir. May 6, 1992)).[4] Thus, discovery requests relating to Therabody's profit margin are not relevant to determining Therabody's purported damages. *Id.*

While the parties' arguments focused on the proper calculation of Therabody's damages, the Special Master then considered the proper calculation of Walton's damages for his fraud claim against Therabody. *Id.* As to those damages, the Special Master concluded that the proper method of calculation is the difference between the value of new Products and the value of the allegedly refurbished Products that Walton received. *Id.* Thus, any "information and document related to quality, pricing, and profit of [Therabody's] Products" is relevant to Walton's Counterclaim. Information related only to the "cost of manufacturing and profit margins of the Products," however, is not relevant. *Id.*

---

[4] Throughout his Objection, Walton contends that the Special Master erred by citing to non-binding precedent, such as *Lasercomb America, Inc. v. Holliday*, 961 F.2d 211 (Table) (4th Cir. May 6, 1992). Walton Obj. 4. While Walton is correct that unpublished Fourth Circuit cases and opinions from other district courts are not binding, this Court is nevertheless free to consider those sources as persuasive authority.

Accordingly, the Special Master recommended that the Court compel Therabody to respond to Walton ROG 17, Walton RFPs 11, 14, and 19, as well as Walton RFAs 11 and 12, all as relevant to the value of new Products in relation to Walton's Counterclaim. *Id.* at 9. The Special Master recommended that the Court not compel Therabody to respond to those requests purely relevant to Therabody's profits generally, i.e., Walton ROG 11 and Walton RFA 2. *Id.*

            *c.*    *Objections*

Therabody objects to the Special Master's determination that any of the above-listed requests are relevant to Walton's Counterclaim, arguing that the prices of its Products, which are publicly available, are sufficient indicators of the Products' value for purposes of Walton's counterclaim damages. Therabody Obj. 12–13. Conversely, Walton objects to the Special Master's determination that Therabody's profits are not discoverable for purposes of determining Therabody's purported damages, restating the argument he made before the Special Master. Walton Obj. 10–11.

            *d.*    *Court's Analysis and Ruling*

Upon *de novo* review, the Court agrees with the Special Master as to the law that controls the disputes and will adopt that aspect of the report. The Court disagrees, however, as to which of the above-listed discovery requests are relevant under controlling law, and thus modifies the R&R's recommended outcome.

In Virginia, fraud damages are calculated by determining the amount lost as a result of the defrauded party's "reliance upon the misrepresentation." *Nestler v. Scarabelli*, 886 S.E.2d 301, 313 (Va. Ct. App. 2023). In the context of Therabody's fraud claim against Walton, the proper calculation of damages is the difference between the price offered to Walton and the typical price offered by Therabody. *See id.* Thus, any profit made by Therabody in its sale to Dominion is not relevant to determining the amount of damages purportedly incurred by Therabody. And,

notwithstanding his argument to the contrary, Walton cannot rely on any actual profit made by Therabody as a result of Dominion's purchase to mitigate Therabody's damages claim. The Court will therefore not compel Therabody to respond to any of the above-listed discovery requests which purely relate to its profit for purposes of calculating its fraud damages.

Applying this same principle in the context of Walton's fraud claim against Therabody, however, means that the proper calculation of damages for Walton's fraud claim is the difference between the value of the product he expected to receive compared to the product he actually received. *Lasercomb Am. v. Holliday*, 961 F.2d 211 (Table) (4th Cir. 1992).

Therabody appears to accept this principle but argues that Walton can determine his damages based on the Products' prices; thus, Walton's attempt to discover information regarding the Products' pricing, quality, or resulting profit is duplicative and irrelevant. Therabody Obj. 12. In support, it cites *Sharma v. USA International*, where the Fourth Circuit commented, in the context of determining fraud damages: "Virginia courts have treated sales price as sufficient evidence of the bargained-for value." 851 F.3d 308, 312–13 (4th Cir. 2017). The actual holding of *Sharma*, however, is inapposite; in fact, the very next line instructs district courts that price may not always be dispositive of the value of goods. *Id.* ("[T]here may be circumstances where a court should question whether a sales price represents the legitimately bargained-for value of goods."). Thus, the Court agrees with the Special Master that information regarding the value of Therabody's Products beyond their price is relevant to Walton's calculation of fraud damages. As such, the Court will compel Therabody to respond to those discovery requests that bear on Walton's determination of the value of Therabody's Products.

As a result of the foregoing, the Court will not compel Therabody to respond to Walton ROG 11; Walton RFPs 11, 14, 19; and Walton RFAs 2, 11, and 12.[5]    The Court will, however, compel Therabody to respond to Walton ROGs 16[6] and 17; as well as Walton RFPs 11, 14, and 19.

2.    <u>Punitive Damages</u>

a.    *Summary of Dispute*

Both parties seek punitive damages.  R&R 9.  To support their claims, both parties seek information regarding their respective financial positions.  Both parties also refuse to respond to the others' request for such information.  The disputed requests are:

- Walton RFP 16: Produce all financial records relating to Therabody during the Relevant Time Period.

- Walton RFP 17: Produce all tax records since 2016.

- Therabody RFP 14: Produce all financial records relating to Dominion during the Relevant Time Period.

- Therabody RFP 15: Produce all paystubs, W-2, or other personal financial and tax records since 2016.

b.    *Parties' Positions and Special Master's Conclusion*

While proceeding before the Special Master, both parties argued that the other had requested irrelevant, undiscoverable information.  *See* R&R 6–7; Therabody Obj. Ex. 3 at 7–9,

---

[5] The Special Master recommended that the Court compel Therabody to respond to Walton RFAs 11 and 12, which both ask Therabody to admit that it financially benefitted from the bulk sale to Dominion.  R&R 9.  However, it is clear to the Court that these requests chiefly relate to Walton's erroneous assertion that Therabody's profits bear upon its fraud damages.   And, to the extent that they relate to the value of Therabody's Products, they are unnecessarily duplicative.  Thus, the Court reverses this aspect of the Special Master's R&R.

[6] The Special Master recommended that the Court not compel Therabody to respond to Walton ROG 16— which asks Therabody to identify the cost of the Products sold to Dominion—as relating only to Therabody's profits.  R&R 8–9.  However, as described above, price can bear on the value of a product.  *Sharma*, 851 F.3d at 312–313.  Thus, the cost of the Products sold to Dominion is relevant to Walton's fraud damages.

ECF No. 61-3. The Special Master concluded that the parties' requests both sought relevant information, since each request related to the parties' financial information, and such information has been held to be relevant to a punitive damages claim. R&R 9–10 (citing *Cutaia v. Radius Eng'g Int'l Inc.*, 2013 WL 12338471, at *1 (W.D. Va. July 5, 2013)). However, because "courts have acknowledged that it may be appropriate to prohibit discovery as to the defendant's net worth until a decision has been rendered on a motion for summary judgement," the Special Master recommended that the Court defer a determination as to the above-listed disputes until such motions had been filed and resolved. *Id.* (internal citation omitted).

       *c.*     *Objections*

Walton objects to the Special Master's recommendation and argues that his request for Therabody's financial information is immediately discoverable because it is relevant to his theory of Therabody's damages, i.e., that, because Therabody did not suffer a loss from its transaction with Dominion, it has not been injured as a matter of law. Walton Obj. 10–13.[7]

Therabody also objects to the Special Master's determination that its request for Walton's financial information is relevant only to punitive damages. Specifically, Therabody argues that it should be permitted to immediately receive and review Walton and Dominion's financial records to determine the falsity of Walton's statements to Spellman. Therabody Obj. 9–10. Therabody explains that it believes Dominion is a "shell entity formed for purposes of perpetrating fraud," and contends that the information requested by Therabody RFPs 14 and 15 is relevant to that theory. *Id.*

---

[7] Walton also argues that Dominion's financial information is not discoverable to Therabody since Dominion is not a party to this action. Walton Obj. 7–8. The Court considers and rejects this argument *infra* Part IV.B.3.

        *d.*     *Court's Analysis and Ruling*

The Court adopts in part and reverses in part the Special Master's recommendation as to the above-listed discovery requests.

As noted in his objection, Walton merely argues that the Court should compel Therabody to respond to Walton RFPs 16 and 17 because they are relevant to his previously-rejected theory of Therabody's damages. However, as stated *supra* Part IV.B.3, the Court agrees with the Special Master's determination that Walton's theory of Therabody's damages is legally erroneous. And, to the extent that Walton RFPs 16 and 17 are relevant to punitive damages, the Court agrees with the Special Master that Walton should not be permitted to discover sensitive financial information based only upon claims for punitive damages that may never proceed to trial. *Moore v. DAN Holdings, Inc.*, 2013 WL 183357, at *14 (M.D.N.C. Apr. 30, 2013) ("The mere inclusion of a bald demand for punitive damages in a pleading does not entitle a litigant to discovery of sensitive financial information."). Therefore, the Court is convinced that Walton's requests for information about Therabody's financial position are not discoverable until punitive damages become an appropriate basis for discovery. As such, the Court will adopt the Special Master's recommendation as to Walton RFPs 16 and 17. At this time, the Court will not compel Therabody to respond, but Walton may seek the information requested by Walton RFPs 16 and 17 if his claim for punitive damages survives summary judgment.

The Court disagrees with the Special Master, however, that Therabody RFPs 14 and 15, requesting Walton and Dominion's financial information, are relevant only to punitive damages. To prove its fraud claim against Walton, Therabody must prove "by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Rsch. Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). Thus, Therabody must prove

13

that Walton's representations to Spellman were, in some respect, untrue.  Therabody seeks to meet

its burden by asserting its theory that Dominion is merely a shell entity, created for the purpose of

perpetrating fraud.  Therabody Obj. 9–10.  Therabody RFPs 14 and 15 are relevant to that theory.

As such, the Court finds that the information requested by Therabody RFPs 14 and 15 to be

immediately discoverable and will compel Walton to respond accordingly.

As a result of the foregoing, the Court partially adopts and partially reverses the Special

Master's recommendation as to discovery disputes related to punitive damages.

       3.      <u>Discoverability of Documents Controlled by an LLC</u>

          *a.*     *Summary of Dispute*

Therabody seeks a significant amount of information and documentation that Walton

contends is technically the property of Dominion, rather than his own.  These are: Therabody

ROGs 9, 14–15, 17–20; Therabody RFPs 5–13, 17–20; and Therabody RFAs 9–21, 25–37, 40–45,

48, 59, 60–64, 71–74.[8]

          *b.*     *Parties' Positions and Special Master's Conclusion*

While proceeding before the Special Master, Walton argued that Therabody could not

discover the requested information because it was controlled by Dominion, which is not a party to

this action.  R&R 10.  Specifically, he argued that, because he is sued in his personal capacity,

Therabody cannot pierce the corporate veil to reach information controlled by Dominion.  *Id.*

In response, Therabody argued that the federal rules of discovery do not impose a harsh

delineation between a corporate officer's personal and corporate capacity; therefore, it could reach

---

[8] Neither party objects to the Special Master's characterization of these particular requests as those requesting
information controlled by Dominion, and, as described *infra*, Walton objects solely on the basis that Therabody cannot
discover information controlled by Dominion, a non-party.  Thus, for the sake of brevity, the Court declines to recite
the substance of the requested disputes—it is sufficient to know that they request information controlled by Dominion.

information controlled by Dominion so long as Walton had access and a legal right to that information. *Id.* at 10–11.

The Special Master agreed with Therabody. Specifically, the Special Master reasoned that, per Federal Rule of Civil Procedure 34(a), parties "must produce documents that are in their possession, custody, or control." *Id.* at 11 (citation modified). A party controls a document whenever it has "the legal right to obtain the documents requested upon demand." *Id.* (quoting *Calkins v. Pacel Corp.*, 2008 WL 2311565, at *5 n.3 (W.D. Va. June 4, 2008)). The dispositive question is not the capacity within which a corporate officer is sued; rather, the only relevant question is whether the party is legally entitled to possess the requested documents. *Id.* at 13 (collecting cases). Because Walton is a member and owner of Dominion, the Special Master concluded that he has a legal right to possess documents and information controlled by it. *Id.* Thus, the Special Master concluded that Walton was obligated to produce the requested documents. *Id.*

### c.    Objections

Walton objects to the Special Master's conclusion for the same reasons that he objected to Therabody's requests in the first place: he contends that he is not obligated to produce documents that are technically controlled by Dominion, a legally distinct entity. Walton Obj. 7–10. Notably, Walton does not object to the Special Master's determination that, as an owner and member of Dominion, Walton has the legal right to possess the relevant documents. *See id.* Therabody does not object to the Special Master's conclusion. *See generally* Therabody Obj.

### d.    Court's Analysis and Ruling

First, the Court considers the Special Master's determination that Walton has a legal right to possess the relevant documents for clear error. Since neither party has objected to this

conclusion, the Court reviews it for clear error only. Finding none, the Court adopts this aspect of the Special Master's R&R.

The Court likewise adopts the remainder of Special Master's determination as to the above-listed disputes, following the requisite *de novo* review. As the Special Master concluded, it is clear to the Court that Therabody need not "pierce the corporate veil" to reach documents controlled by Dominion. R&R 12–13. A party's legal entitlement to a document is sufficient to require that the party produce that document upon an otherwise lawful request. *E.g.*, *Devon Robotics v. DeViedma*, 2010 WL 3985877, at *2 (E.D. Pa. Oct. 8, 2010). And, because Walton is legally entitled to those documents, he must produce them. Thus, the Court will compel Walton to respond to Therabody ROGs 9, 14–15, 17–20; Therabody RFPs 5–13, 17–20; and Therabody RFAs 9–21, 25–37, 40–45, 48, 59, 60–64, 71–74.

       4.    <u>Discoverability of Therabody's Members</u>

       a.    *Summary of Dispute*

Next, Therabody disputes Walton ROG 7, which states: "Identify any members or other persons that hold an ownership or pecuniary interest in Therabody."

       b.    *Parties' Positions and Special Master's Conclusion*

While proceeding before the Special Master, Therabody argued that it should not have to respond to Walton ROG 7 because the identities of its members and those with an ownership or pecuniary interest in Therabody are irrelevant to either parties' claims. R&R 14. In response, Walton argued that, since Therabody has requested similar information regarding Dominion, Walton should be able to request the same information as to Therabody. *Id.*

The Special Master agreed with Therabody. *Id.* at 14–15. Specifically, the Special Master found that identities such as those sought by Walton are relevant where "a party has a need to show whether a group of corporate entities have overlapping control, to show how a corporation makes

16

certain decisions, or when the individuals are somehow involved in the claim." *Id.* at 15 (collecting cases). However, because Walton does not advance any allegations against Therabody that would make its individual members or investors liable, those identities are not relevant to this particular action. *Id.* at 16. As such, the Special Master recommended that the Court not compel Therabody to respond to Walton ROG 7.

> ### c.    Objections

Walton objects to the Special Master's recommendation. In support, he again advances the same arguments made before the Special Master: that he is entitled to the requested information simply because Therabody has requested similar information. Walton Obj. 14–15. Walton does not, however, articulate how the requested information is legally relevant to either parties' claims. *See id.* In fact, Walton implies that he is entitled to the information simply because there is no rule specifically *prohibiting* his discovery of corporate membership or identity of investors. *See id.*

Therabody does not object to the Special Master's conclusion. *See generally* Therabody Obj.

> ### d.    Court's Analysis and Ruling

The Court will adopt the entirety of the Special Master's recommendation as to Walton ROG 7. At bottom, a litigant may only discover that which is relevant to the underlying action. *Wrangen*, 593 F. Supp. 2d at 1277; *accord Oppenheimer Fund*, 437 U.S. at 350–51. Walton's briefing on the Special Master's R&R is telling—even Walton, who is best positioned to describe the relevance of the sought-after information, cannot identify the relevance of the information requested by Walton ROG 7. *See* Walton Obj. 14–15.

A review of Walton's claims against Therabody confirms that Walton ROG 7 seeks information totally irrelevant to the instant litigation. As noted by the Special Master, Walton's Counterclaim does not advance any theory of harm that implicates any of Therabody's members

17

or investors. *See generally* Countercl. Thus, Walton has no discernible basis for requesting the identities of those individuals, and Therabody has no obligation to produce such information. As such, the Court agrees with this aspect of the R&R and will not compel Therabody to respond to Walton ROG 7.

     5.    <u>Moot Issues</u>

The Special Master then considered Walton ROGs 3–4; and Walton RFAs 17–23, 30. The R&R represents that Therabody has, during the course of proceeding before the Special Master, responded to these requests by Walton. R&R 16. Thus, the Special Master concluded that those disputes are now moot. *Id.* at 16–17. Neither party has objected to this conclusion. *See generally* Therabody Obj.; Walton Obj.

The Court has reviewed the Special Master's conclusion for clear error and found none. As such, it will adopt the entirety of this portion of the R&R.

     6.    <u>Miscellaneous Relevance Issues</u>

The parties next dispute a number of miscellaneous discovery requests for lack of relevance. The Court will consider these individually.

     *a.*    *Therabody ROG 13*

Therabody ROG 13 states: "Identify all third parties that You have assisted with the bulk purchase of any consumer goods."

The Special Master concluded that this request is not relevant to the instant matter and therefore recommended that the Court not compel Walton to respond. R&R 17. Therabody objects to the Special Master's conclusion and argues that information about Walton's previous purported bulk purchases are highly relevant to the instant matter, since such information bears on the falsity of Walton's statements to Spellman. Therabody Obj. 6–7.

The Court agrees with Therabody.  As noted *supra*, the falsity of Walton's statements to Spellman are directly relevant to Therabody's fraud claim against Walton.  *Evaluation Rsch. Corp.*, 439 S.E.2d at 390 (holding that, to prevail on a fraud claim, a plaintiff must demonstrate that the defendant made a "false representation").  Because Therabody ROG 13 is relevant to Therabody's fraud claim, the Court reverses this aspect of the R&R and will compel Walton to respond accordingly.

>    b.    *Therabody RFAs 7, 8*

Therabody RFAs 7 and 8 both relate to Walton's personal financial information.  They state:

- Therabody RFA 7: Admit that You never received an Internal Revenue Service Schedule K-1 from Dominion.

- Therabody RFA 8: Admit that You never received an Internal Revenue Service Form 1099 from Dominion.

The Special Master concluded that both RFAs are unreasonably cumulative since a significant portion of Therabody's discovery requests "were aimed at whether Walton was the sole owner, member, or employee of Dominion."  R&R 17.  Thus, the Special Master recommended that the Court not compel Walton to respond to Therabody RFAs 7 and 8.  *Id.*

Therabody objects to the Special Master's recommendation, arguing that Therabody RFAs 7 and 8 are relevant to its theory that Dominion is merely a "shell company," and therefore bear on the falsity of Walton's statements to Spellman.  Therabody Obj. 8–10.  As the Court has described above, the falsity of Walton's statements is directly relevant to Therabody's fraud allegations against Walton.  *Supra* Part IV.B.2.d.  Thus, the Court finds that Therabody RFAs 7 and 8 are immediately discoverable and reverses this aspect of the R&R.  The Court will compel Walton to respond to Therabody RFAs 7 and 8.

19

###### c.    *Therabody RFAs 22, 23, and 65*

Therabody RFAs 22, 23, and 65 each request information regarding Walton's previous conduct.  They state, respectively:

- Therabody 22: Admit that You made Bulk Purchase Orders for consumer goods prior to the purchase of the Products.

- Therabody 23: Admit that You have sold products originating from a Bulk Purchase Order for a profit to a third party prior to the purchase of the Products.

- Therabody 65: Admit that You have previously been accused of fraud by any third party besides Therabody.

The Special Master concluded that "Walton's interactions with third parties nor unproven accusations of fraud prior to his interactions with Therabody are relevant to this dispute."  R&R 18.  Thus, the Special Master recommended that the Court not compel Walton to respond.

Therabody objects, arguing that the above-listed requests are again relevant to determining the falsity of Walton's statements to Spellman regarding Dominion's ability to conduct a campaign as he described, based in part on Walton's representation that Dominion had previously conducted similar campaigns.  Therabody Obj. 10–11.  Walton does not object.  *See generally* Walton Obj.

The Court again agrees with Therabody, and will reverse this aspect of the Special Master's R&R.  Therabody RFAs 22 and 23 are relevant to determining the literal falsity of Walton's statements to Spellman, which directly bear on Therabody's ability to maintain its burden at trial.  And, Therabody RFA 65 bears on Therabody's broader shell entity theory, which is likewise relevant to the elements of Therabody's fraud claim.

Admittedly, evidence of previous conduct—as is sought by the instant requests—is often inadmissible at trial.  Fed. R. Evid. 404(b).  However, evidence need not be admissible to be discoverable.  Fed. R. Civ. P. 26(b)(1).  Thus, because "[t]he Federal Rules contemplate the

broadest discovery possible in the search of the truth," *Doe*, 289 F. Supp. 3d at 749 (quoting *Kline*, 345 F. Supp. at 32), the Court deems the instant requests to be relevant, and will compel Walton to respond to Therabody RFAs 22, 23, and 65.

        *d.*     *Walton ROG 10*

Walton ROG 10 asks Therabody to "[i]dentify every phone number Andrew Spellman uses for regular Communications." The Special Master concluded that this request was relevant and recommended that the Court compel Therabody to respond. R&R 18.

Neither party objects to this conclusion, *see generally* Therabody Obj.; Walton Obj., and Therabody has advised that it intends to comply, Therabody Obj. 2.

The Court has reviewed this conclusion for clear error and found none. As such, the Court adopts this aspect of the R&R and will compel Therabody to respond to Walton ROG 10.

        *e.*     *Walton ROGs 12 and 15*

Walton ROGs 12 and 15 both relate to Therabody's previous conduct. They state, respectively:

- Walton ROG 12: Identify all third parties that You have sold the bulk purchase of any consumer goods.

- Walton ROG 15: Identify the number of Products Therabody has sold as corporate gifts in the last three (3) years, the cost of the Products, and the identity of the third-party to whom the corporate gifts were sold.

The Special Master concluded that these requests are irrelevant to the parties' dispute, and therefore recommended that the Court not compel Therabody to respond. R&R 18.

Neither party has objected to the Special Master's conclusion. *See generally* Therabody Obj.; Walton Obj. Thus, the Court reviews the Special Master's recommendation for clear error

21

only.  Finding none, the Court adopts the Special Master's conclusion and will not compel Therabody to respond.[9]

        *f.*        *Walton RFAs 3, 6, 10, 14, 15, and 16*

Walton RFAs 3, 6, 10, 14, 15, and 16 are miscellaneous requests upon Therabody.  They state:

- Walton RFA 3: Admit that the Products purchased subject to the Agreement and Orders were all represented to be new and unused.

- Walton RFA 6: Admit that You did not research the number of Dominion's employees prior to selling the Products to Dominion.

- Walton RFA 10: Admit that You do not have any affiliates working with You.

- Walton RFA 14: Admit that You did not accept as a return any Products shipped to Dominion.

- Walton RFA 15: Admit that You did not provide Dominion with any refund for selling Products as new which were not new.

- Walton RFA 16: Admit that Andrew Spellman has actual authority to enter into contracts on Plaintiff's behalf.

As to these requests, the Special Master concluded that each "are relevant to the claims and defenses in this matter and impose a minimal burden on Therabody."  R&R 18.  Thus, the Special Master recommended that the Court compel Therabody to respond to the above-listed requests.

Neither party objects to the Special Master's conclusion.  *See generally* Therabody Obj.; Walton Obj.  Thus, the Court reviewed the recommendation for clear error only.  Finding none,

---

[9] In some ways, the instant requests mirror Therabody RFAs 22, 23, and 65, which request information regarding Walton's previous conduct.  *See supra* Part IV.G.3.  However, unlike Therabody's requests, Walton has not articulated any theory implicating Therabody's previous conduct.  *See generally* Walton Obj.

the Court will adopt this aspect of the Special Master's R&R and compel Therabody to respond accordingly.

> g.    *Therabody RFAs 38 and 39*

Therabody RFAs 38 and 39 are requests upon Walton to provide information as to the purchase and purported resale of Therabody's Products. They state, respectively:

- Therabody RFA 38: Admit that You financially benefitted from the sale of the Products that were purchased subject to the Agreement and Orders.

- Therabody RFA 39: Admit that You are aware of at least one Product purchased from Plaintiff that was resold for a profit by Dominion.

Similarly to the above, the Special Master concluded that these requests "are relevant to this dispute and impose a minimal burden on Walton." R&R 18. Thus, the Special Master recommended that the Court compel Walton to respond. *Id.*

Again, neither party has objected to the Special Master's recommendation. *See generally* Therabody Obj.; Walton Obj. Finding no clear error, the Court will adopt this aspect of the Special Master's R&R and compel Walton to respond accordingly.

**C.    Analysis of Additional Disputes**

1.    <u>Timeliness of Therabody's Supplemental Responses</u>

The first of Walton's Additional Disputes relates to the timeliness of Therabody's supplemental responses, discussed *supra* Part IV.B.5. Specifically, Walton contests that Therabody's claims and defenses related to its supplemental discovery responses should be struck, since this Court's original Scheduling Order set discovery to end on March 29, 2024—approximately six months prior to Therabody's supplemental response. R&R 19–20 (citing Scheduling Order ¶ 7, ECF No. 32).

The Special Master concluded that, notwithstanding the language of the Scheduling Order, discovery in this matter has not yet closed. *Id.* The Special Master did so for two reasons. First, on April 11, 2024, by order, this Court paused all pretrial deadlines. R&R 20 (citing Order, ECF No. 47). Second, on May 29, 2024, by order, this Court appointed the Special Master to "effectively and timely manage discovery." *Id.* (citing Order, ECF No. 55). The Special Master reasoned that those Orders effectively stayed all discovery deadlines, notwithstanding the previous order setting discovery to close on March 29, 2024. *Id.* Thus, because discovery had not yet closed, the Special Master recommended that the Court not strike Therabody's supplemental responses. *Id.*

While the objection is not a model of clarity, Walton appears to object to the Special Master's recommendation, insisting that "[d]iscovery in this matter closed on March 29, 2024." Walton Obj. 5. Thus, the Court considers the matter *de novo*.[10]

The Court agrees with the Special Master and will adopt this aspect of the R&R.

First, the Court clarifies that discovery has not closed in this matter. The Special Master is correct; by referring this matter to the Special Master, this Court intended that the parties would be permitted to continue to develop discovery. Federal courts wield an inherent power to "control the judicial process and litigation," which extends to discovery. *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 42–50 (1991). Thus, notwithstanding its previous Scheduling Order, the Court was permitted to reopen discovery, even implicitly, by pausing all pretrial deadlines and referring the matter to Special Master.

Even if the supplemental response was untimely, the rules of discovery do not require that a Court automatically strike such responses, *see generally* Fed. R. Civ. P. 37, and Walton does not

---

[10] Therabody does not appear to object to the Special Master's conclusion. *See generally* Therabody Obj.

provide any authority to this effect.  *See* Walton Obj. 5–6.  Instead, the Federal Rules provide that, "[i]f a a party fails to provide information . . . the party is not allowed to use that information . . . to supply evidence . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Here, the parties have been engaged in discovery disputes with some level of judicial intervention since March 29, 2024—the day on which discovery was set to conclude—when Therabody notified the Court of the disputes.  Mot. Extend Case Deadlines, ECF No. 43.  Since that date, the parties have been unable to meaningfully advance beyond the discovery phase; in fact, as identified by the Special Master, on May 29, 2024, the Court stayed this matter entirely, pending the resolution of the various discovery disputes.  Moreover, once the matter was referred to the Special Master, both parties were on notice that they may be required to supplement their responses, and, as a natural result, may need to review supplemental discovery from the opposition.

As a result, it is clear to the Court that the timing of Therabody's supplemental responses was harmless.  Thus, there is no basis upon which to strike Therabody's claims or defenses, and the Court adopts the Special Master's R&R accordingly.

### 2.    Propriety of the April 22, 2024 Subpoena

Next, Walton contests the propriety of an April 22, 2024 subpoena ("the Subpoena") propounded by Therabody's *pro hac vice* counsel upon C.W. Wright Construction, a third-party, requesting certain electronic documents.  R&R 21–23.  Specifically, while proceeding before the Special Master, Walton contested the propriety of the Subpoena on three grounds.  First, Walton argued that the Subpoena was inappropriate because it was sent after the close of discovery on March 29, 2024.  *Id.* at 21.  Second, Walton argued that the Subpoena was invalid because it was signed only by Therabody's counsel who had been admitted *pro hac vice*.  *Id.*  Third, Walton contended that the subpoena violated the 100-Mile limit imposed by Federal Rule of Civil

Procedure 45(c)(2).  *Id.* at 22.  Walton argues that the Subpoena warrants sanctions upon Therabody.  *Id.* at 21.

The Special Master disagreed with Walton on each ground.  First, the Special Master surmised that, for the same reasons articulated *supra* Part IV.C.1, discovery had not yet closed. *Id.* at 21.  Second, as to the signature by counsel admitted only *pro hac vice*, the Special Master determined that such a subpoena was permitted under the Local Rules, since the Local Rules only require that "filings" be signed by local counsel.  *Id.* at 22.  Thus, because a subpoena is not a "filing," the Subpoena did not violate the Local Rules' requirements.  Third, as to Walton's 100-Mile Rule argument, the Special Master concluded that, based on other decisions by district courts in the Fourth Circuit, the 100-Mile Rule does not apply where a subpoena does not require a recipient to physically travel.  *Id.* at 23 (citing *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 713 (D.S.C. 2017); *Brooks v. St. Charles Hotel Operating, LLC*, 2024 WL 3370580, at *4 (D. Md. Feb. 12, 2024); *BK Racing, LLC v. Devine*, 2023 WL 3331563, at *3–4 (Bankr. W.D.N.C. May 9, 2023)).  As such, the Special Master determined that Walton had no basis on which to complain about the Subpoena, and therefore recommended that the Court not find that the Subpoena was improper.  *Id.*

Walton objects to the Special Master's conclusion, advancing arguments identical to those which he raised to the Special Master.  Walton Obj. 6.  Therabody does not object.  *See generally* Therabody Obj.

The Court agrees with the Special Master on each ground.  First, as the Court has already set out *supra*, discovery has not yet closed in this matter.  Thus, the timing of the Subpoena is not a basis to deem it improper.

The Court also agrees that the Local Rules do not prohibit counsel admitted *pro hac vice* from independently signing subpoenas. As noted by the Special Master, the Local Rules of this Court only prohibit counsel admitted *pro hac vice* from independently submitting docket filings:

> Except where a party conducts his or her own case, no *pleading or other filing* required to be signed by an attorney shall be filed unless also signed by an attorney who is admitted or authorized to practice in this Court . . . , with the office address where notice can be served upon said attorney, and who shall have such authority that the Court can deal with the attorney alone in all matters connected with the case.

E.D. Va. Loc. Civ. R. 83.1(E)(3) (emphasis added). The Court is convinced that the Subpoena is not a "pleading or filing" as contemplated by the Local Rules. As such, Therabody's *pro hac vice* counsel was not required to accompany his signature on the Subpoena with that of local counsel.

Finally, the Court agrees that the Subpoena did not violate the 100-Mile Rule. As noted, the 100-Mile Rule stems from Federal Rule of Civil Procedure 45(c)(2), which states: "A subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person . . . ."

At first blush, the Rule appears to prohibit any subpoena propounded upon an individual or entity who does not reside, work, or transact business within a 100-mile radius of the place of litigation. However, courts have uniformly interpreted the Rule to only apply to subpoenas that require the recipient to *physically appear* at a particular location, rather than those which merely require electronic or mailed production. *Chestnut* v. *Kincaid*, 2022 WL 350117, at *2 (D. Md. Feb. 4, 2022) (interpreting the 100-Mile Rule to only prohibit subpoenas "requir[ing] a nonparty to travel more than 100 miles from where the nonparty resides, is employed, or regularly transacts business in person"); *Brooks*, 2024 WL 3370580, at *4 (collecting cases); *CresCom*, 269 F. Supp. 3d at 713 ("A number of courts have held that Rule 45(c)(2)(A)'s 100-mile boundary does not

apply where, as here, the subpoenaed person is not instructed to also appear at the production location along with the requested documents.").

Here, the Subpoena required C.W. Wright Construction to provide various documents and communications to Therabody by email and/or mail. Walton Obj. Ex. D, ECF No. 60-4. Critically, it did not require any individuals to appear at a physical place. *Id.* Thus, as outlined above, the 100-Mile Rule does not apply.

Because none of Walton's complaints provide a basis to find the Subpoena improper, sanctions upon Therabody are unwarranted. The Court will adopt this aspect of the R&R.

      3.    <u>Therabody's Obligation to Disclose Results of the Subpoena</u>

Finally, Walton contends that sanctions upon Therabody are appropriate due to its failure to disclose C.W. Wright's response. R&R 23. The Special Master concluded that Federal Rule of Civil Procedure 45—which controls subpoenas upon non-parties—contains no requirement to disclose the results of a subpoena. *Id.* at 23–24. Moreover, the Special Master observed that Walton had not even made a request to Therabody for the results of the Subpoena. *Id.* at 24. Finding no authority supporting Walton's argument, the Special Master concluded that sanctions were not warranted. *Id.*

Walton objects to the Special Master's conclusion here, arguing that "Plaintiff has failed to disclose the content/documents of any response from [C.W.] Wright in violation of its discovery obligations." Walton Obj. 6. Therabody, for its part, does not object. *See generally* Therabody Obj.

The Court again agrees with the Special Master. Walton cites no authority in support of his contention that litigants must provide any nonparty discovery to the opposing party, neither can the Court locate any such authority. Of course, the Court will not issue sanctions upon a party

for failure to comply with a rule that does not exist.  Accordingly, the Court will adopt this aspect of the R&R.

## D.    Remaining Issues

In the R&R, the Special Master alerted the Court as to two outstanding issues that he deemed to be outside of his authority.  These are: (1) whether sanctions are appropriate for either party beyond the discovery-based sanctions requests articulated *supra*, R&R 19; and (2) whether Walton should be permitted to amend his counterclaim to add claims for Abuse of Process and Tortious Interference against Therabody's counsel, R&R 24–25.  The Court has reviewed this conclusion by the Special Master *de novo*[11] and agrees that these issues are beyond his appointed authority.  *See* Order, ECF No. 55 (setting out Special Master's subject matter authority).  Thus, these issues remain outstanding.

## V. CONCLUSION

As a result of the foregoing, the Court will adopt the Special Master's R&R in part and reverse in part.  An appropriate Order shall issue.

/s/ *RCY*
_____
Roderick C. Young
United States District Judge

Date: <u>September 22, 2025</u>
Richmond, Virginia

---

[11] It is unclear whether Walton objects to these determinations by the Special Master.  *See* Walton Obj. 17–18.  Thus, as a precautionary measure, the Court has applied the *de novo* review standard.  *See* Fed. R. Civ. P. 53(f).